Richard Lee OWEN,
Petitioner-Appellant,

v.

Jack DUCKWORTH,
Respondent-Appellee.

No. 83–1389.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 3, 1984.

Decided Feb. 8, 1984.

David E. Vandercoy, Valparaiso, Ind., for petitioner-appellant.

Kermit R. Hilles, Deputy Atty. Gen., Indianapolis, Ind., for respondent-appellee.

Before WOOD, ESCHBACH and POSNER, Circuit Judges.

PER CURIAM.

In his second appeal to this court, the petitioner, Richard Lee Owen, seeks review of the district court's denial of his petition for a writ of habeas corpus. The issue on appeal is whether Owen was denied his constitutional right to an impartial jury as a result of a threat made to one juror and communicated by that juror to other members of the jury. Noting jurisdiction under 28 U.S.C. § 2253; we hold that the district court's finding of no juror prejudice is clearly erroneous and, accordingly, we reverse the judgment of the district court.

## I.

Richard Lee Owen was tried and convicted by an Indiana trial court in 1976 on one charge of attempting to commit a felony while armed. During the first week of the two week trial, Juror Mary A. Tolley received an anonymous phone call. The caller told Juror Tolley: "God damn you, honky. You better not testify. We have a contract out on you. We are going to get you. We are going to get you." Juror Tolley reported this call to the trial court the following day. The trial court immediately held an *in camera* hearing at which both Owen, acting *pro se,* and the prosecutor were present.

At this *in camera* session, Juror Tolley stated that the call had frightened her, but in response to the court's questioning she asserted that "I think I'm going to continue and be fair minded." At this point, the trial court suggested that the call could have been made either on Owen's behalf or "on behalf of the State intending to prejudice you against the defendant." Juror Tolley agreed. The trial court again questioned Juror Tolley concerning her ability to continue as an impartial juror. Juror Tolley responded that she could be fair minded. After instructing Juror Tolley not to discuss the threat with the other jurors, the trial court found that Juror Tolley could continue as an impartial juror and denied Owen's motion for a mistrial.[1]

After the trial, Owen learned that Juror Tolley, contrary to the trial court's instructions, might have informed other jurors of the threat and discussed the threat during the jury's deliberations.[2] Owen filed a motion to correct errors in which he raised the issue of possible juror bias. The state trial court held a hearing on Owen's motion, but terminated the hearing when it appeared that the evidence being presented might invade the province of the jury's deliberations. The trial court ultimately denied

---

1. By this time in the trial, both alternates had been seated.

2. After the trial, Owen requested the public defender to investigate the effect of the threat to Juror Tolley on the jury's deliberations. Patrick McManama, a Notre Dame law student working for the public defender's office at the time, contacted and questioned seven jurors by telephone. Owen based his motion to correct errors on the results of this informal, unauthorized survey.

Owen's motion. Owen again raised the possible prejudice of the eleven jurors (other than Juror Tolley) on direct appeal to the Indiana Supreme Court. That court, however, unanimously affirmed Owen's conviction. *Owen v. State,* 269 Ind. 513, 381 N.E.2d 1235 (1978).

Owen filed a petition for a writ of habeas corpus in federal district court on April 19, 1979. In that petition, Owen raised seven issues. The district court denied the petition. On appeal, Owen contested the district court's judgment on two issues. Without oral argument, we affirmed the district court's denial of the petition on one of the two grounds raised. *Owen v. Duckworth,* 636 F.2d 1222, unpublished order (7th Cir. 1980). The second issue, concerning possible juror prejudice, was set on the calendar for oral argument.

In a second unpublished order following oral argument, we addressed the juror prejudice issue. Noting that the state trial court had terminated the hearing on Owen's motion to correct errors before Owen had presented all of his evidence, we held that the state court's post-conviction proceeding "was not adequate to afford a full and fair hearing" on the issue of juror prejudice and that "the material facts were not adequately developed" in the state court. *Owen v. Duckworth,* 636 F.2d 1222, unpublished order at 9 (7th Cir.1980) 645 F.2d 74 (citing *Townsend v. Sain,* 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963)) (hereinafter "the December Order"). Consequently, we remanded the case to the district court for an evidentiary hearing. *Id.* 636 F.2d 1222, unpublished order at 9–10. *See* 28 U.S.C. § 2254(d)(2), (3).

The respondent sought review of our December Order in the Supreme Court. Following that Court's denial of certiorari, *see* 452 U.S. 951, 101 S.Ct. 3096, 69 L.Ed.2d 963 (1981), the district court assigned the case to a United States Magistrate for the purpose of conducting the evidentiary hearing ordered by this court. The hearing was held on March 30 and April 20, 1982, at which time the magistrate heard testimony from all of the jurors except Juror Tolley, who was unavailable because of illness. Based on the testimony given, the magistrate found the following facts:

First, Tolley or another juror mentioned Tolley's nervous condition and the fact that the police were accompanying her to and from the courthouse to a group of jurors in the jury room during the first week of the trial. Second, other than some very vague references, her condition and circumstances were not mentioned or discussed again. Third, although some jurors testified to a suspicious phone call, none of them was sure who told them of the call. It is possible that a few of these jurors may have even assumed it was a threatening phone call which upset Tolley, as the testimony of both [Juror] Osborn and [Juror] Rockwell illustrates that each did some assuming to help explain Tolley's nervousness. Fourth, at no time during deliberations were the subjects of Tolley's condition, her police escort, or the phone call discussed by any of the jurors. Lastly, none of the eleven jurors who testified was aware of the substance of the call, the identity of the person originating the call, or attributed the same to Owen or another person connected with him.

The magistrate then concluded that, while the petitioner had "shown evidence of outside communication received by a juror during the course of trial," "the state ... met its heavy burden of showing that the communication was harmless to the defendant." Over the objections of the petitioner, the district court adopted the magistrate's Report and Recommendation in whole and denied the petition for a writ of habeas corpus. This appeal followed.

## II.

It is unquestioned that the Due Process Clause of the Fourteenth Amendment extends to state court defendants the right to be tried by an impartial jury. *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 551, 96 S.Ct. 2791, 2799, 49 L.Ed.2d 683 (1976); *Ristaino v. Ross,* 424 U.S. 589, 595 & n. 6, 96 S.Ct. 1017, 1020 & n. 6, 47 L.Ed.2d 258 (1976); *Duncan v. Louisiana,* 391 U.S.

145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Thus, any contact between third parties and jurors regarding an ongoing trial, outside the trial forum, raises serious questions concerning the continued impartiality of the jurors. *Patterson v. Colorado,* 205 U.S. 454, 462, 27 S.Ct. 556, 558, 51 L.Ed. 879 (1907) (Holmes, J.); *United States v. Howard,* 506 F.2d 865, 866 (5th Cir.1975). While serious, extra-judicial contacts will not always rise to the level of prejudicial error; some may be harmless. *See, e.g., Rushen v. Spain,* — U.S. —, 104 S.Ct. 453, 455–56, 78 L.Ed.2d 267 (1983) (per curiam); *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982); *Bruce v. Duckworth,* 659 F.2d 776, 781–82 (7th Cir.1981), *cert. denied,* 455 U.S. 955, 102 S.Ct. 1464, 71 L.Ed.2d 673 (1982); *United States v. Fleming,* 594 F.2d 598, 608 (7th Cir.), *cert. denied,* 442 U.S. 931, 99 S.Ct. 2863, 61 L.Ed.2d 299 (1979).

■ Post-conviction proceedings are generally adequate to determine whether a jury's impartiality has been affected by an extra-judicial contact. *See, e.g., Rushen v. Spain,* 104 S.Ct. at 456; *Smith v. Phillips,* 455 U.S. at 218–19 & n. 8, 102 S.Ct. at 946–47 & n. 8. Where, as here, the state's post-conviction proceedings prove inadequate, the federal district court must conduct an evidentiary hearing. 28 U.S.C. § 2254(d). At this hearing, the defendant has the burden of proving an outside contact. Once that contact is established, "the jury is, for obvious reasons, deemed presumptively prejudic[ed] . . . ." *Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954). While this presumption is rebuttable, "the burden rests heavily upon the Government to establish . . . that such contact with the juror was harmless to the defendant." *Id.*

■ A determination of jury prejudice is complicated in the federal courts by the proscription against questioning jurors directly about the effect of the outside contact on their deliberations. Fed.R.Evid. 606(b); *United States v. Bagnariol,* 665 F.2d 877, 884–85 (9th Cir.1981), *cert. denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). Rather than question the jurors directly, a district court must make findings of fact at two separate levels. First, the district court must find the basic, or subsidiary, facts—e.g., the nature, content, and extent of the extra-judicial contact. Based on its findings of subsidiary facts, the district court must then make the ultimate factual determination: whether the contact likely affected the juror's impartiality.[3] *United States v. Vasquez,* 597 F.2d 192, 194 (9th Cir.1979); *United States v. Howard,* 506 F.2d 865, 868–69 (5th Cir.1975).

■ We review the district court's findings of fact under the clearly erroneous standard. However, because the ultimate factual determination of impartiality depends on inferences of effect drawn from the subsidiary facts, we believe a more critical review of the district court's ultimate finding of fact is appropriate in this context than in other situations. *See Clark v. Universal Builders, Inc.,* 706 F.2d 204, 206 (7th Cir.1983) (review under "clearly erroneous" standard is broader where district court finds facts by drawing inferences from basic facts); *Flowers v. Crouch-Walker Corp.,* 552 F.2d 1277, 1284 (7th Cir.1977).

### III.

Owen contends that the magistrate erred in finding that none of the eleven jurors (excluding Juror Tolley) was biased as a result of their knowledge of the threatening phone call to Juror Tolley. The respondent concedes that some (we count six) of the other eleven jurors knew of the call.[4] At

---

3. The Supreme Court recently stated that the ultimate determination of whether a juror was prejudiced is a question of fact. *Rushen v. Spain,* — U.S. —, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983) (per curiam). *But see id.* 104 S.Ct. at 468 (Marshall, J., dissenting) (suggesting that this determination is a mixed question of law and fact).

4. Jurors Rockwell, Klabusich, Ralph, Torbenson, and Osborn remembered the phone call when they testified at the evidentiary hearing, Juror Yarger did not recall any phone call when she testified at the evidentiary hearing, but she had testified at the state hearing on Owen's motion to correct errors that she was "vaguely aware" that one juror had received a threaten-

issue is whether this knowledge was prejudicial or harmless under the circumstances of this case.

In our remand order, we noted two subsidiary facts that we believed might "be determinative of the existence or absence of prejudice in this case." December Order at 9. First, the district court was to determine whether the call was discussed during the jury's deliberations. Testimony given in the state court hearing on Owen's motion to correct errors suggested that Juror Tolley might have mentioned the call to two jurors who were holding out. The magistrate, and we believe quite properly, discredited the source of that state court testimony and concluded that no discussion of the call occurred during deliberations.

A second subsidiary question of fact over which we expressed concern was whether Juror Tolley attributed the call to Owen or an associate of Owen when she spoke to the other jurors about the call. On remand, the magistrate made no specific finding of fact concerning the content of Juror Tolley's remarks to the other jurors. The transcript of the evidentiary hearing, though, shows that Juror Tolley at no time attributed the call to either Owen or an associate of his. However, this does not end the inquiry. While our December Order was phrased in terms of what Juror Tolley said, it is equally or perhaps more important to know whether the other jurors independently attributed the call to Owen or a person connected with him. Assumptions regarding such matters can affect a juror's behaviour as much as actual knowledge of the facts. Indeed, erroneous assumptions can under certain circumstances be even more prejudicial than knowledge of the facts.

■ The magistrate found that "none of the eleven jurors who testified ... attributed the [call] to Owen or another person connected with him." This subsidiary finding of fact is directly contrary to the testimony presented at the evidentiary hearing. Of the six jurors who knew of the call, three assumed that the call originated with Owen or one of his associates. In response

to the question "Did [Juror Tolley] inform you or anyone else present who she suspected may have made such a telephone call," Juror Rockwell testified that "I thought, Your Honor, it was possibly a friend ... [of] Richard Lee Owen, somebody that personally knew him." When asked if he "in any way associate[d] the defendant ... with that threat," Juror Torbenson replied, "Well, assuming the fact that there was a—apparent threat, where would it come from? In other words, I suppose in a way I did, yes." Finally, when posed a similar question, Juror Osborn responded, "She didn't come out and say that [Owen was responsible for the call]. Not that I recall.... But—you know." We hold, therefore, that the magistrate's finding of fact on whether any of the eleven jurors attributed the call to Owen or an associate is clearly erroneous; three of the jurors did attribute the call to "Owen or another person connected with him."

## IV.

We now review the district court's ultimate determination that none of the eleven jurors was biased by their knowledge of the call to Juror Tolley. We concentrate our attention on the three jurors who attributed the call to Owen or an associate.

When these jurors entered the jury room to deliberate, they were under the assumption that Owen, or a friend, had made a threatening phone call to Juror Tolley. At the very least, the three jurors might have assumed that Owen or his friend was capable of criminal acts—i.e., threatening jurors. In addition, they may have thought that a friend of Owen believed Owen was guilty and that a threatening phone call would help swing the jury in his favor. In any event, knowledge of the call to Juror Tolley, and any assumptions adverse to Owen raised by that knowledge, could have unduly prejudiced these jurors' view of Owen's guilt or innocence. Absent a showing which clearly supports a finding that the knowledge was harmless, we must find

ing phone call. The magistrate took judicial

notice of this prior testimony.

that Owen was denied his constitutional right to an impartial jury.

No steps were taken, and unfortunately could not have been taken in this instance, to counteract the effect of the three jurors' assumptions. *Cf. United States v. Sublet,* 644 F.2d 737, 740–41 (8th Cir.1981) (jurors individually questioned and curative instruction given); *United States v. Fleming,* 594 F.2d at 608 (jurors individually questioned prior to deliberations). Unlike Juror Tolley, these jurors were not told that the call could have come from someone favoring either Owen or the state; at least three jurors assumed that Owen or a friend was the only possible source. In addition, the three jurors did not know that the call insinuated that Juror Tolley was a witness. Juror Osborn, for instance, testified that he surmised the threat "was something to the effect of 'You better not find him guilty' ...." The actual call, given its inconsistency with reality, was less likely to bias a juror than the impressions some jurors drew from the limited information they received.

Moreover, contrary to other cases where the state has met its heavy burden, the respondent has not shown that the three jurors believed the threat was a joke, *see, e.g., United States v. Norton,* 700 F.2d 1072, 1076 (6th Cir.) (jurors viewed phone call as a "harmless prank"), *cert. denied,* —— U.S. ——, 103 S.Ct. 1885, 76 L.Ed.2d 814 (1983), or that they were not frightened by knowledge of the call, *see, e.g., United States v. Sublet,* 644 F.2d at 741 (jurors expressed no fear or uneasiness about extra-judicial contact). To the contrary, four jurors knew that Juror Tolley was transported to and from the trial by police officers; two of the four jurors—Jurors Rockwell and Osborn—assumed that the police transportation was related to the threat. This knowledge would certainly suggest to those two jurors that the threat was serious and not to be taken lightly. Indeed, Juror Osborn testified that "we was all afraid of our shadows a little bit."

■ While it is impossible to say for certain what effect the knowledge of the

threatening phone call to Juror Tolley actually had on the other jurors, we believe that the three jurors who attributed the call to Owen or an associate may well have been prejudiced by their knowledge. Because we cannot say that the juror contact was harmless under the circumstances of this case, we are compelled to conclude that the state did not meet the burden imposed by *Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954). We hold, therefore, that the district court's ultimate factual determination—that the respondent met his heavy burden of showing the extra-judicial contact harmless—was clearly erroneous.

V.

For the reasons expressed above, the judgment of the district court is reversed. The case is remanded to the district court with instructions to grant the petition for a writ of habeas corpus and issue the writ unless the petitioner is brought to trial in the Indiana state courts within ninety days of the date of this opinion.