**Robert EVANS, Petitioner–Appellant,**

v.

**Warren YOUNG, Superintendent of Waupun Correctional Institution, and Donald Hanaway, Attorney General of Wisconsin, Respondents–Appellees.**

No. 87–1627.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 15, 1987.

Decided Aug. 29, 1988.

John E. Tradewell, Wisconsin Public Defender's Office, Madison, Wis., for petitioner-appellant.

William L. Gansner, Asst. Atty. Gen., Wis. Dept. of Justice, Madison, Wis., for respondents-appellees.

Before WOOD, Jr., MANION and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Robert Evans appeals from the district court's order denying his petition for a writ of habeas corpus. He challenges his conviction by a jury in a Wisconsin state court for operating a motor vehicle without the owner's consent and the resulting nine-

---

**8.** The Participation Agreement itself contains provisions essentially the same as section 502(g)(2) of ERISA.

month sentence. Wis.Stat. § 943.23. A potentially prejudicial remark was made by a passerby to the bailiffs and overheard by some members of the jury. Evans claims that his constitutional rights to due process and an impartial jury were violated when the judge denied his motion to individually voir dire the members of the jury regarding the remark. We find that under the circumstances in this case, the procedures used by the state judge were appropriate to provide Evans a fair trial, and the decision of the district court is affirmed.

## I. Background

Evans was on trial in the Winnebago County Circuit Court in Oshkosh, Wisconsin. The events at issue in this appeal occurred soon after the jury in Evans' case had been impaneled. Upon conclusion of the opening arguments, the jury was escorted by two bailiffs to lunch at a nearby restaurant. During lunch, Ted Urban, an individual not otherwise involved with the case, walked by the bailiffs and said, "Hang him," or "We ought to hang him." This statement was within earshot of the jury. The incident was immediately reported to the judge, who called Urban before him. On the record, with the jury excused and in the presence of both counsel, Urban was asked to explain his comment. Urban stated:

My remarks were not intended toward any member of the jury. I know both the bailiffs, Bob and George here, for many, many years, and I walked by—I also served on juries in the past—and in a jokingly [sic] manner, it was just a casual remark, that we ought to hang him.

I don't know anything about the trial or the defendant. Didn't even know there was a case being heard and I was addressing my remarks both to Bob and George and no other. It was not meant in any seriousness. It was most casual and in a joking manner. It was simple as that. No intent of any kind behind it. I apologize to the Court for causing this commotion.

(Trial Transcript, page 12).

After hearing Urban's explanation regarding the remark, the judge concluded

that he would initially question the jury as a group. When they were returned into open court, the judge asked the members of the jury to raise their hands if they had heard any of Urban's remark. Although the actual number is unclear, the record reflects that several jurors responded affirmatively. Then addressing those jurors who had raised their hands, the judge asked if any of them knew Urban. The jurors responded negatively. The judge then asked those jurors who had heard the comment whether it had any influence on them. One juror, Mr. Andraschko, responded "not me." The judge followed this response by asking whether any of the jurors considered the comment to be anything more than a joke. Again, Mr. Andraschko was the only juror to respond verbally. He stated that he "would consider it a joke, or something of that sort; not really a joke." Satisfied that the jury would not be affected by Urban's comment, the judge denied both defendant's motion to voir dire each juror individually and his motion for a mistrial. The judge then gave the jury the following curative instruction:

I am going to caution the jury to disregard entirely anything you may have heard this gentleman say. You are advised that what he said was done in a joking manner. It was intended as a joke with no knowledge of what case might have been involved, whether it was a civil case or a criminal case, who the defendant might have been, or any knowledge whatsoever of any facts concerning the case. You are to give it no weight. You are to disregard it entirely and strike it entirely from your deliberations in this matter.

At the close of evidence, the judge reiterated his conclusion about the effect of Urban's statement:

I found that the comment, if any, Mr. Urban may have made was not prejudicial, it's harmless error, if any error indeed ensued since there was an instruction immediately given. And the jury members who admitted hearing the remarks also indicated they interpreted the

same as a joke and were not taking it as a serious situation.

The jury found Evans guilty, and he unsuccessfully appealed his conviction to the Wisconsin Court of Appeals and the Wisconsin Supreme Court. Evans then filed a petition for habeas corpus which the district court denied because, in its view of the record, "no error of constitutional magnitude occurred."

## II. Analysis

 Evans argues that the trial court violated his rights to due process and an impartial jury by failing to conduct an individual voir dire of each juror who had heard Urban's statement. Petitioner argues that under the Supreme Court's decision in *Remmer v. United States*, 347 U.S. 227, 229–30, 74 S.Ct. 450, 451–52, 98 L.Ed. 654 (1954), Urban's statement was to be deemed presumptively prejudicial and that such a "full hearing" was necessary to enable the Government to properly meet its "heavy burden" of proving the harmlessness of the statement. As we understand Evans' argument, the Government was required to affirmatively establish the impartiality of each juror who overheard the comment. Evans' position appears to rest on a misreading of the requirements of *Remmer*. Under the circumstances of this case, the hearing conducted by the trial court was more than sufficient to show that Urban's remark was a stupid but harmless attempt at humor, thus dispelling any prejudice arising therefrom.

In *Remmer*, the Supreme Court was faced with a considerably more serious allegation of unauthorized juror contact. The contact in *Remmer* became known to the defendant only after the jury had rendered its guilty verdict. The Court held that:

> In a criminal case, any private communication, contact, or tampering with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Id.* at 228, 74 S.Ct. at 450. *See also Mattox v. United States*, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892). The Court went on to clarify the nature of its hearing requirement, stating that the trial court "should determine the circumstances [surrounding the contact], the impact thereof on the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." *Remmer*, 347 U.S. at 229–30, 74 S.Ct. at 451–52. In a subsequent decision involving the same case, the Court further explained that it had ordered a "full hearing" under the circumstances because it did not want to speculate from a sparse record about the effects of the alleged juror tampering and related FBI investigation at issue. *Remmer v. United States*, 350 U.S. 377, 379–80, 76 S.Ct. 425, 426–27, 100 L.Ed. 435 (1956) (*Remmer II*).

From these principles, it is clear that both the presumption of prejudice and the hearing requirement established in *Remmer* were broadly aimed at protecting the integrity of the jury proceedings—and thus the accused's right to an impartial jury—against unauthorized invasions. To that extent, we do not read the Court's opinions as requiring, especially in the context of an ongoing trial, a certain quantum of proof to overcome the presumption of prejudice, or as mandating a particular procedure for conducting the hearing.[1] *United States v.*

---

1. Petitioner cites our decision in *Owen v. Duckworth*, 727 F.2d 643 (7th Cir.1984) in support of the proposition that the trial court must follow a particular process when conducting a *Remmer* hearing and that the Government must affirmatively prove the harmlessness of the unauthorized juror contact. In *Owen*, this court addressed the nature of a subsequent evidentiary hearing to be conducted by a federal district court when the state court's post-conviction proceedings prove inadequate in developing the underlying facts surrounding an unauthorized juror contact. We do not believe that the directions provided in *Owen* are directly applicable to a case like this where the trial court was able to fully investigate and dispel any prejudice

*Williams,* 822 F.2d 1174, 1189–90 (D.C.Cir. 1987). The trial courts retain wide latitude over how to conduct such hearings, *United States v. Coleman,* 805 F.2d 474, 482 (3rd Cir.1986), and substantial discretion over the determination of whether the prejudice arising from an unauthorized contact is rebutted or rendered harmless. *United States v. Thibodeaux,* 758 F.2d 199, 202 (7th Cir.1985); *United States v. Robinson,* 756 F.2d 56, 59 (8th Cir.1985); *United States v. Delaney,* 732 F.2d 639, 642 (8th Cir.1984). Finally, the trial courts also have equally broad discretion in choosing how to remedy such prejudicial influences. *United States v. Williams,* 737 F.2d 594, 613 (7th Cir.1984); *United States v. Aiello,* 771 F.2d 621, 629 (2d Cir.1985).

The breadth of discretion vested in the trial courts in such circumstances stems from the recognition that they are best qualified to evaluate the potential effect of the misconduct and determine which procedures should be employed to deal with the particular misconduct. *United States v. Webster,* 750 F.2d 307, 338 (5th Cir.1984). This point was recently stressed by the Court of Appeals for the District of Columbia, which held that individualized polling of the jurors is not mandated by *Remmer. United States v. Williams,* 822 F.2d at 1189–90. The *Williams* court pointed out that such a rigid requirement might jeopardize an accused's rights, in some instances, by causing the "jurors polled to attach undue significance to the incident." *Id.*

■ That being said, we are convinced that the hearing conducted by the state trial court in the present case was well within the framework envisaged by the Court in *Remmer* and *Remmer II. See United States v. Day,* 830 F.2d 1099, 1105 (10th Cir.1987). The trial judge began by establishing the nature of the unauthorized contact in a hearing outside the presence of jury and with all parties present and free to participate. He did so under ideal circumstances: Urban was called before the court and questioned about both the substance of his comment and his intentions.

Although there may be situations where the intentions of the third party are irrelevant with regard to the affect of his or her statements, the inquiry here allowed the court to determine the overall context of the statement. After measuring the seriousness of the statement, the trial judge questioned the jury to determine how many jurors overheard it. Once he established that the remark was overheard by at least some of the jurors, the judge asked whether the comment would effect their deliberations and whether they considered it to be anything other than the joke it was meant to be. Juror Andraschko's response is instructive. As indicated earlier, he stated that he considered Urban's comment to be something like a joke, suggesting that as a joke, the remark was so thoughtlessly poor that it was not funny. From his observations of the jury and their responses to his questions, the judge determined that the comment was not prejudicial to Evans and that an immediate curative instructions would be sufficient to render the comment harmless. *See Francis v. Franklin,* 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 1976 n. 9, 85 L.Ed.2d 344 (1985) (a crucial assumption of our constitutional system is that jurors carefully follow the trial court's instruction).

In this case, the trial court's response was both proper and fitting in light of the frivolous nature of the juror contact involved. Our review of the record reveals that the procedure employed by the state trial court did not violate Evans' rights to due process and an impartial jury. The district court's decision denying the petition for habeas corpus is therefore AFFIRMED.

arising from the contact before the jury reached its verdict. *See Smith v. Phillips,* 455 U.S. 209, 216–17, 102 S.Ct. 940, 945–46, 71 L.Ed.2d 78 (1982).