65 F.3d 170
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Jerry SYLVESTER, Petitioner-Appellant,
v.
Jack DUCKWORTH, Respondent-Appellee.
 No. 94-1923.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 22, 1995.*
Decided Aug. 23, 1995.
 
 Before CUMMINGS, COFFEY and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Jerry Sylvester was convicted in an Indiana state court of criminal deviate conduct, burglary, confinement, and battery and is serving a 28-year sentence.[1] The convictions arose out of an incident in which Sylvester broke into the home of Sue Bagley (his ex-wife, with whom he had a continuing, on-and-off sexual relationship), threatened her, assaulted her, and engaged in a number of sexual acts. Sylvester filed a habeas corpus petition under 28 U.S.C. Sec. 2254, arguing that (1) the trial court's application of Indiana's Rape Shield law violated his constitutional rights, (2) the jury was improperly allowed to separate and have contact with outsiders during its deliberations, and (3) the trial court judge engaged in improper ex parte contact with the jury.[2] The district court denied his petition, and we affirm.
 
 I. Indiana Rape Shield Law
 
 2
 Sylvester contends that his ability to present a defense was impaired because the trial court failed to hold a hearing concerning whether evidence of Bagley's past sexual conduct would be admissible at trial.[3] Even if the trial court violated Indiana law by failing to hold a hearing, however, Sylvester must show that his federal rights were violated in order to obtain relief under Sec. 2254. Stephens v. Miller, 13 F.3d 998, 1001 (7th Cir.1994), cert. denied, 115 S.Ct. 57 (1994). He offers two arguments that his federal rights were violated.
 
 
 3
 First, Sylvester argues that the rape shield law impeded his cross-examination of Bagley. The Indiana Rape Shield law is facially constitutional. Stephens, 13 F.3d at 1001; Tague v. Richards, 3 F.3d 1133, 1137 (7th Cir.1993). We must, however, examine claims that the application of the law deprived a defendant of a fair trial on a case-by-case basis. Tague, 3 F.3d at 1137.
 
 
 4
 Rape shield laws implicate the Sixth Amendment to the extent that they limit a defendant's right to confront witnesses or introduce relevant evidence. See Michigan v. Lucas, 500 U.S. 145, 149 (1991). Sylvester sought to introduce evidence of his sexual history with Bagley, which is relevant to the question of consent. See Wood v. Alaska, 957 F.2d 1544, 1551 (9th Cir.1992). The trial court allowed Sylvester's counsel wide latitude in his cross-examination of Bagley, who was subjected to extensive cross-examination concerning her past sexual relations with Sylvester. See V State R. at 243-291.[4] In addition, the record does not reflect that Sylvester sought to introduce any evidence of Bagley's past sexual conduct that was excluded from the trial. Thus we agree with the district court that Sylvester's cross-examination of Bagley was not impeded by the rape shield law.
 
 
 5
 Next, Sylvester claims that the trial court's failure to hold a hearing deprived him of "the opportunity to discover ... what if any areas should be investigated before trial." Appellant's Brief at 7. Sylvester appears to be arguing that because no hearing was held, he did not know what evidence would be admissible at trial, and thus he did not know how to conduct his pretrial investigation. This argument seems backwards: the purpose of a hearing under Ind.Code Sec. 35-37-4-4 is to determine whether evidence that a defendant has already gathered will be admitted at trial, not to define the scope of pretrial discovery. In any event, Sylvester did not present this argument to the Indiana courts, so it is procedurally defaulted. See Lostutter v. Peters, 50 F.3d 392, 394 (7th Cir.1995), cert. petition filed (June 6, 1995) (No. 94-9577); Nutall v. Greer, 764 F.2d 462, 464 (7th Cir.1985). Moreover, even if his briefs to the Indiana courts could be construed to raise this claim, no federal rights were implicated. Sylvester has no general right to pretrial discovery under the federal constitution. Pennsylvania v. Ritchie, 480 U.S. 39, 52 (1987) (plurality opinion); Weatherford v. Bursey, 429 U.S. 545, 559 (1977); Thompkins v. Cohen, 965 F.2d 330, 333 (7th Cir.1992).[5]
 
 II. Jury Separation
 
 6
 Sylvester argues that his constitutional rights were violated because the jury was improperly allowed to separate. During the deliberations, the jury was allowed to take a break, which included taking a walk outside the courthouse. The jurors were escorted on the walk by Leah Cox, the court reporter, who was serving as the acting bailiff.[6] Sylvester claims that the jurors split into two groups, some of the jurors got into their cars and temporarily left the courthouse, and others had conversations with members of the public. In his state post-conviction proceedings, Sylvester argued that the jury separation deprived him of a fair trial. The Indiana courts denied his claim and made the following factual findings:
 
 
 7
 At no time during these deliberations was a member of the Jury allowed to:
 
 
 8
 a. Separate from fellow Jurors
 
 
 9
 b. Make Contact with anyone other than Court officials;
 
 
 10
 c. Leave the vicinity of the Curry Building, where the trial was held;
 
 
 11
 d. Enter a liquor store, or
 
 
 12
 e. Otherwise stray from the custody of Ms. Cox.
 
 
 13
 II State R. p. 79 (Monroe County Court Order).
 
 
 14
 Federal courts reviewing habeas corpus petitions must generally presume that the factual findings of the state courts are correct. 28 U.S.C. Sec. 2254(d); Purkett v. Elem, 115 S.Ct. 1769, 1771 (1995); Hockett v. Duckworth, 999 F.2d 1160, 1165 (7th Cir.1993). However, Sec. 2254(d) allows the federal courts to reject state court factual findings that are "not fairly supported by the record." 28 U.S.C. Sec. 2254(d)(8); Purkett, 115 S.Ct. at 1771. Sylvester contends that the great weight of the evidence presented in the state court hearing established that the jury did indeed separate and have contact with outsiders.
 
 
 15
 At the state post-conviction hearing, eight witnesses testified concerning the jury's walk. Two witnesses: Leah Cox (the acting bailiff) and Max Nettleton (the jury foreman) testified that the all of the jurors stayed in the same vicinity and had no contact with members of the public. Six other witnesses, four of whom were family members or friends of Sylvester,[7] testified that they saw the jurors split up into at least two groups when they went outside for a walk. Two of the six said that they saw a few jurors get into cars and leave. Vivian Sylvester, Jerry Sylvester's mother, stated that she saw one of the jurors talking to a man in the parking lot who was driving a black truck. See III State R. at 284-86. None of the other witness testified that they observed contact between any jurors and members of the public.
 
 
 16
 The various and sometimes conflicting stories[8] presented by eight witnesses required the Indiana courts to determine which witnesses were more credible. The Monroe County court's findings are supported by the testimony of Cox and Nettleton. If the record supports a state court's findings of fact, we may not disturb its credibility judgments. Cf. Anderson v. City of Bessemer City, North Carolina, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). We must accept the conclusion of the Indiana courts that the jurors did not separate or have contact with members of the public; thus the district court's denial of Sylvester's jury separation claim was proper.[9]
 
 
 17
 III. Ex Parte Communication Between Judge and Jury
 
 
 18
 Finally, Sylvester argues that the trial judge engaged in an ex parte conversation with the jury where he answered a question concerning a jury instruction. Sylvester asserts that neither he nor his attorney were present during this exchange.
 
 
 19
 At the state post-conviction hearing, the jury foreman (Nettleton) admitted that his memory of the incident was "very foggy." III State R. at 348. Still, he testified that "[i]t seems to me that we did call for a clarification." Id. at 346. He stated further that the jury did not re-enter the courtroom to formally present its question and that Sylvester's attorney was not present. Id. at 348. Nettleton could not remember how the question was transmitted or what it concerned. See id. at 348-49. The Indiana post-conviction court found that Sylvester failed to demonstrate that improper contact occurred, holding that "[t]he evidence relating to the issue of the Jury's improper communications with the Trial Judge during deliberations is vague, uncertain, and inconclusive." II State R. at 79.
 
 
 20
 A criminal defendant has a due process right to be present and to have counsel present "at all critical stages of the trial." Rushen v. Spain, 464 U.S. 114, 117 (1983). Clarification of a jury instruction is an important matter, and the defendant's counsel "must be given an opportunity to be heard before the trial judge responds to any juror inquiry." United States v. Smith, 31 F.3d 469, 471 (7th Cir.1994). If the judge clarified an instruction to the jury without affording Sylvester's attorney an opportunity to be heard, he may have committed an error of constitutional magnitude.[10] In addition, if Sylvester demonstrates that the judge engaged in improper ex parte contact with the jury, prejudice will be presumed. United States v. Doherty, 867 F.2d 47, 72 (1st Cir.1989), cert. denied, 492 U.S. 918 (1989); cf. Owen v. Duckworth, 727 F.2d 643, 646 (7th Cir.1984) (prejudice presumed if defendant proves that jury had contact with outsiders).
 
 
 21
 Before we will presume prejudice, however, Sylvester must prove that the judge engaged in ex parte contact with the jury. Cf. Owen, 727 F.2d at 646 (petitioner has burden of proving juror contact with outsiders). The state post-conviction court concluded that Sylvester's evidence of ex parte contact was too vague and inconclusive to warrant a reversal. Sylvester was afforded a full and fair opportunity to present evidence of the alleged ex parte contact at his state post-conviction hearing, and we agree that he has failed to meet his burden of proof. Nettleton's "foggy" recollection that maybe a clarification was requested--the nature of which and manner requested unknown--is not sufficient to invoke the presumption of prejudice.
 
 IV. Conclusion
 
 22
 The trial court's failure to hold a rape shield hearing did not result in a violation of Sylvester's constitutional rights. In addition, the state post-conviction court's determination that the jurors neither separated nor had contact with members of the public is fairly supported by the record. Finally, Sylvester has not proven that ex parte contact between the trial judge and the jurors occurred. Thus, he is not entitled to relief under Sec. 2254.
 
 
 23
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 Sylvester received concurrent 20-year sentences for the criminal deviate conduct, burglary, and confinement convictions, to run consecutively to an 8-year sentence for battery
 
 
 [2]
 Sylvester also argued to the district court that the jury verdict was inconsistent and the sentences imposed were disproportionate to his crimes. He does not press these claims on appeal
 
 
 [3]
 Indiana law requires a hearing if a defendant charged with a sex crime seeks to introduce evidence: "(1) of the victim's or a witness's past sexual conduct with the defendant; (2) which in a specific instance of sexual activity shows that some person other than the defendant committed the act upon which the prosecution is founded; or (3) that the victim's pregnancy at the time of trial was not caused by the defendant." Ind.Code Sec. 35-37-4-4(b)
 
 
 [4]
 For example, one of the prosecution's contentions at trial was that Sylvester forced Bagley to shave her pubic hair. During cross-examination, Bagley admitted that in the past she and Sylvester had shaved their pubic hair as part of consensual sexual activity. V State R. at 243-44
 
 
 [5]
 The constitution does require the prosecution to turn over "evidence favorable to an accused upon request ... where the evidence is material either to guilt or to punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963). In addition, if a state provides discovery in criminal cases, it may not give more discovery rights to the prosecution than to the defense: "discovery must be a two-way street." Thompkins, 965 F.2d at 333. The trial court's failure to hold a rape shield hearing did not violate either Brady or Thompkins
 
 
 [6]
 Sylvester argues that Cox should not have taken the jurors for a walk because she was never sworn in as bailiff. If Cox failed to take the bailiff's oath, however, this is at most a violation of state law that is not sufficient to warrant federal habeas corpus relief. Cf. Stephens, 13 F.3d at 1001
 
 
 [7]
 Sylvester's mother, two sisters, and a friend of the family testified
 
 
 [8]
 For example, Sylvester's sisters, Arlene Brummett and Mary Lou Shields, testified that the jurors were laughing, giggling, and jogging around the parking lot. See III State R. at 141, 218-20. In contrast, Betty Pefley testified that the jurors were not jogging, laughing, or "cutting up." Id. at 185, 211-12
 
 
 [9]
 Even if the evidence indicated that the jury separated, we would not presume prejudice; Sylvester would still bear the burden of proving that the separation had a "substantial and injurious effect," see Brecht v. Abrahamson, 113 S.Ct. 1710, 1722 (1993), on his trial. Cf. Holt v. United States, 218 U.S. 245, 251 (1910) (prejudice not presumed from fact that jury separated; otherwise, "it will be hard to maintain [a] jury trial under the conditions of the present day") (Holmes, J.); Zeller v. Greater Baltimore Medical Center, 506 A.2d 646, 655 (Md.App.1986) (prejudice not presumed from jury separation). If Sylvester successfully proved that the jury had contact with members of the public, a presumption of prejudice would arise. Owen v. Duckworth, 727 F.2d 643, 646 (7th Cir.1984)
 
 
 [10]
 In Smith, a federal criminal case, the court stated that the right to be present derives from Fed.R.Crim.P. 43(a), the Due Process Clause, and the Confrontation Clause. Id. Rule 43(a) provides a broader right to be present than either the Due Process Clause or the Confrontation Clause, so the Smith court did not decide in what situations the constitutional provisions alone create a right to be present before the judge communicates with the jury. See id. at 473; cf. Rogers v. United States, 422 U.S. 35, 38-39 (1975); United States v. Neff, 10 F.3d 1321, 1323-24 (7th Cir.1993); United States v. Widgery, 778 F.2d 325, 332 (7th Cir.1985). For present purposes, we will assume without deciding that the clarification of a jury instruction is a critical stage of the trial where the defendant has a due process right to be present