67 F.3d 301
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Osvaldo CALDERIN, Defendant-Appellant.
 No. 94-2616.
 United States Court of Appeals, Seventh Circuit.
 Argued April 10, 1995.
Decided Sept. 20, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied Nov. 9, 1995.
 
 1
 Before MANION and ROVNER, Circuit Judges, and WILL, District Judge*.
 
 ORDER
 
 2
 Osvaldo Calderin was convicted by a jury of conspiring to distribute cocaine and was sentenced to 204 months of incarceration. He now appeals his conviction, challenging three of the district court's rulings. We affirm.
 
 
 3
 I. Admission of previously undisclosed evidence
 
 
 4
 Calderin first contests the admission into evidence of a six-page document generated by government witness Gina Sarduy following her own arrest on cocaine trafficking charges. The document identified and contained information about individuals with whom Sarduy had conducted her illicit dealings. During the government's redirect examination of Sarduy, it became clear that although the document contained six pages, the defense had received only the first page, which did not contain information relating to Calderin. Following a conference held outside the presence of the jury, the court determined, and the parties do not contest, that although the government had indeed provided the defense with only page one of the document, the error had been inadvertent and had not involved bad faith. The court therefore decided to admit the document and offered the defense several options for dealing with the new development. These included (1) examining Sarduy outside the presence of the jury regarding the information contained in the document, (2) reopening its cross-examination, or (3) requesting a continuance to investigate the document and prepare a further cross-examination. (See February 10, 1994 Tr. at 409-428.)[1] Defense counsel rejected these options and moved instead to strike Sarduy's testimony altogether or, in the alternative, to exclude the additional five pages of the document. The court denied these motions.
 
 
 5
 Calderin now argues that he is entitled to a new trial because he was surprised and prejudiced by the late admission of the document. We disagree. According to the Jencks Act, 18 U.S.C. Sec. 3500, the government's obligation to produce documents relating to the testimony of its witnesses arises only upon completion of its direct examination of those witnesses.[2] If the government "elects not to comply" with the Act, the trial court may either strike the implicated testimony or declare a mistrial. 18 U.S.C. 3500(d). In United States v. Wables, 731 F.2d 440, 447 (7th Cir.1984), we held that:
 
 
 6
 [W]hen the government belatedly produces pretrial statements without any motive to suppress evidence and when any prejudice resulting from the tardy production of statements is curable at trial, the government has not "elect[ed] not to comply" with the production requirements of the Jencks Act. Therefore, the trial court is not limited to the sanctions listed in subsection (d), but may use its discretion to fashion appropriate remedies.
 
 
 7
 The Wables court faced facts much like our own. The government's inadvertent failure to disclose certain Jencks Act material was discovered after the defense had completed its cross-examination of the government's witness. The court found that the opportunity to reopen cross-examination adequately remedied any possible prejudice caused by the omission. Id. at 447. As in Wables, Calderin was not prejudiced by the government's error. Calderin was offered an opportunity not only to reopen his cross-examination of Sarduy, but also to have the trial continued so that he might investigate the new evidence or prepare a new cross-examination. Calderin has failed to convince us that those measures were inadequate. The district court did not abuse its discretion in refusing to strike Sarduy's testimony or grant a new trial.
 
 II. Motion for a New Jury Panel
 
 8
 During a recess that followed voir dire of the jury panel but preceded selection of the jury, court-appointed interpreter Fernando Torres conversed with two members of the jury panel as he stood before a public vending machine. The court, which learned of the problem before court resumed, questioned Torres regarding the communication and gave counsel an opportunity to do the same. Torres reported that the conversation had been unrelated to Calderin's case. The court also questioned the two jurors, who like Torres reported that the conversation was unrelated to the trial. They also indicated that they did not believe their impartiality to have been compromised by the conversation. The court invited defense counsel to make a motion regarding the jurors, and defense counsel responded with a motion that the entire jury panel be dismissed and replaced with a new panel. The court understandably denied this motion. Subsequently, the defense neither asked that the two jurors be excused for cause nor exercised its preemptory challenges to have them excused. Calderin now argues that starting over with an entirely new panel was the only reasonable remedy for the ex parte communication, because he could not fairly be required to exercise one of his limited preemptory challenges on these jurors.
 
 
 9
 Calderin's argument is unpersuasive. First, not every ex parte juror communication requires drastic corrective measures. See, e.g., United States v. Williams, 737 F.2d 594, 612 (7th Cir.1984), cert. denied, 470 U.S. 1003 (1985). Instead, "[a] trial may proceed if the court, after considering factors such as the communication's nature, the jurors' responses, and the curative ability of instructions, finds that the jury can (and will) remain impartial and render a verdict based solely on the evidence, not the improper contact. This finding is essentially one of fact, and is reviewable under the clearly-erroneous standard." Id. (citations omitted). In addition, the district court is afforded "broad discretion" in remedying any prejudicial impact. Id. at 613. See also Evans v. Young, 854 F.2d 1081, 1083-84 (7th Cir.1988). In this case, with the jury not yet empaneled at the time of the prohibited communication, any perceived prejudice could obviously have been remedied by simply dismissing the two jurors who had, under Calderin's theory, been tainted. If Calderin believed that the jurors had been prejudiced because of their communication with Torres, he could have requested that the jurors be dismissed for cause. Having failed to request that simple solution to any perceived problem, however, Calderin's argument on appeal lacks any credibility. Certainly the district court did not abuse its discretion in failing to dismiss the entire jury panel when the defense failed even to request the far more reasonable alternative of simply dismissing these two jurors.
 
 III. Jury Instructions
 
 10
 Finally, Calderin contests the district court's failure to instruct the jury regarding his inability to speak English.[3] He argues that his lack of English language skills was a crucial element of his defense, which rested on the theory that he could not have participated in the charged conspiracy because he could not have communicated with its other members. As we have articulated on numerous occasions, a defendant is entitled to have the jury instructed regarding his theory of defense if:
 
 
 11
 (1) the defendant proposes a correct statement of the law; (2) the defendant's theory is supported by the evidence; (3) the defendant's theory of defense is not part of the charge; and (4) the failure to include an instruction on the defendant's theory in the jury charge would deny the defendant a fair trial.
 
 
 12
 United States v. Rice, 995 F.2d 719, 725 (7th Cir.1993); See also United States v. Scott, 19 F.3d 1238, 1245 (7th Cir.), cert. denied, 115 S.Ct. 163 (1994). Calderin's proffered instruction fails to meet this test. First, we are familiar with no case suggesting that lack of English language skills precludes a conviction for conspiracy, and Calderin has cited no such case. Nor did the evidence support Calderin's theory. Indeed, it suggested to the contrary that two Spanish-speaking codefendants were able to translate for Calderin, and that as time progressed Calderin himself was able to communicate directly with his coconspirators in English. (See, e.g., February 8, 1994 Tr. at 153, 165, 295; February 10, 1994 Tr. at 462-464.)
 
 IV. Conclusion
 
 13
 For the reasons states herein, Calderin's conviction is AFFIRMED.
 
 
 
 *
 The Honorable Hubert L. Will of the Northern District of Illinois, sitting by designation
 
 
 [1]
 The government also suggested that the jury might be instructed regarding the error to alleviate defense counsel's concern about the possible damage to his own credibility. Defense counsel also rejected this option. (Id. at 417-418.)
 
 
 [2]
 18 U.S.C. Sec. 3500 provides:
 (a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness ... shall be the subject of subpena [sic], discovery, or inspection until said witness had testified on direct examination in the trial of the case.
 (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement ... of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified....
 
 
 [3]
 Calderin also contests the district court's decision to employ Seventh Circuit Pattern Jury Instructions 5.07 and 6.04. He offers neither authority nor argument to support this complaint, however, and we see no problem with the district court's use of these instructions