**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Judious A. KIZEART, Defendant–Appellant.**

**No. 96–1350.**

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1996.

Decided Dec. 13, 1996.

Robert Lee Garrison (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for U.S.

Andrea L. Smith, Phil Kavanaugh (argued), Office of the Federal Public Defender, East St. Louis, IL, for Judious A. Kizeart.

Before CUMMINGS, RIPPLE and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.

Defendant Judious A. Kizeart was convicted under the "felon in possession" statute, 18 U.S.C. § 922(g)(1), as a previously convicted felon, for knowingly possessing and transporting. in interstate commerce ammunition

called Detective Trella to the stand. The detective testified that Neal had given inconsistent statements to the police but had agreed to speak truthfully on February 23, 1994, because he did not believe that Mr. Kizeart was treating Neal's sister (who was Mr. Kizeart's girlfriend) properly. In that tape-recorded interview of February 23, which Detective Trella described in detail, Neal identified Mr. Kizeart as the masked robber who shot Riley. Detective James Temple, who also was present during that interview, confirmed that Neal identified Mr. Kizeart as the shooter of Adrian Riley.

The court admitted the tape-recorded interview of Cedric Neal, over Mr. Kizeart's objection, and played it to the jury. When the tape was concluded, the court instructed the jury that the tape was admitted on the issue of Neal's credibility and not for the truth of the statements made. The defense recalled Neal to the stand; he then testified that Mr. Kizeart did not do the shooting on February 2 "[b]ecause he didn't have a mask." Tr.II at 356. Neal also testified that he and Gates borrowed Mr. Kizeart's car that night and that Mr. Kizeart did not go with them to Carbondale. After Neal was cross-examined, the defense rested.

During jury deliberations the court informed counsel that graffiti, perhaps gang-related and containing Kizeart's nickname, "Ju Ju," had been written across the street. Defense counsel moved for a mistrial because of the "possibility the jurors might have seen [the graffiti] when they came in this morning." Tr.V at 2. The court responded that the graffiti had "just happened." Id. It confirmed with a marshal in the courtroom that it had appeared at lunchtime and concluded, "It wasn't there before." Id. at 3. At that point defense counsel replied, "Thank you, your Honor." Id. Implicit was the court's denial of the motion. No other relief was requested.

The jury returned a guilty verdict. The district court sentenced Mr. Kizeart to 120 months of imprisonment, three years of supervised release, a $3,000 fine and a $100 special assessment. Mr. Kizeart raises three challenges to his conviction. He asserts there was insufficient evidence for a convic-

tion and appeals two rulings by the trial court, one admitting the tape-recorded statement and the other denying a motion for mistrial. We now address each of Mr. Kizeart's submissions.

## II

## DISCUSSION

### A. Sufficiency of the Evidence

Mr. Kizeart asserts the evidence, in its totality, cannot sustain a finding of guilt because it was inherently unbelievable. The defendant submits that these following pieces of evidence do not "add up." First, co-conspirator Gates testified that Mr. Kizeart's firearm was a "black-brown handled .32." Tr.I at 43. Second, co-conspirator Higgins testified that Mr. Kizeart's weapon was a "small .25 revolver." Tr.II at 253. Third, the bullet retrieved from the crime scene was a .38 caliber cartridge. Fourth, according to the government's firearms expert, that size cartridge would not fit in a .32 or .25 caliber firearm. Thus, Mr. Kizeart asserts, the testimony of Gates and Higgins is "incredible as a matter of law" because it would have been physically impossible under the laws of nature for the occurrence to have taken place as the government contends. Accordingly, the defendant contends, the evidence connecting Mr. Kizeart to a firearm was insufficient to convict him.

When we review the record for sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in the original). To prevail in an insufficiency challenge, an appellant thus bears a substantial burden.

The essential elements of 18 U.S.C. § 922(g)(1), as alleged in this case, are that a convicted felon transported ammunition in interstate commerce and possessed that ammunition. To convict Mr. Kizeart under § 922(g)(1), therefore, the government was required to prove beyond a reasonable doubt

that Mr. Kizeart had a prior felony conviction, that he had possessed ammunition for a firearm, and that the ammunition had travelled in interstate commerce. *See United States v. Gill,* 58 F.3d 334, 336 (7th Cir.1995); *United States v. Kitchen,* 57 F.3d 516, 520 (7th Cir.1995). Mr. Kizeart does not challenge either his prior felony conviction or the government's proof that he possessed and transported both ammunition and a firearm in interstate commerce during the Illinois–Kentucky trip. Mr. Kizeart asserts only that the inconsistent evidence concerning the caliber of his weapon leads to a physical impossibility that precludes a finding of his guilt.

Mr. Kizeart's assertion is not pertinent to the finding of his guilt under § 922(g)(1). The evidence central to the government's required proof of Mr. Kizeart's possession of ammunition that he transported across state lines is uncontradicted. We note, as well, that the defendant does not challenge coconspirator Gates' identification of the gun used in the robbery and shooting as the one taken from under the passenger seat of Mr. Kizeart's car after their return to Illinois from Kentucky. Nor does Mr. Kizeart deny the testimony of Gates and Higgins that he possessed and used that ammunition in his firearm during the robbery of the Elm Street house and the shooting of Adrian Riley. A .38 caliber bullet was retrieved from the crime scene, but no firearm that could have fired that bullet was recovered. The differing testimony of the two co-conspirators as to the caliber of Mr. Kizeart's weapon does not present legally incredible evidence, *see United States v. Hernandez,* 13 F.3d 248, 252–53 (7th Cir.1994); rather, it reflects simply a difference of opinion concerning a detail, one that cannot support an insufficiency claim. *See United States v. Handford,* 39 F.3d 731, 736 (7th Cir.1994).

The clashing testimony of Gates and Higgins concerning the caliber of Mr. Kizeart's gun would create a "physically impossible" circumstance only if the jury had to believe both assertions. However, it was fully within the province of the jury rationally to believe either or neither coconspirator. *See United States v. Muthana,* 60 F.3d 1217, 1223 (7th Cir.1995). The jury could have believed the testimony of Gates and Higgins as they described their own conduct and the activities of Mr. Kizeart before and on February 2, 1994, and it could have disbelieved their testimony concerning the caliber of Mr. Kizeart's gun. Neither Gates nor Higgins was qualified as a firearms expert in gun caliber identification at trial, and nothing in their testimony would lead a rational juror to believe either man had such an ability. Indeed, Gates' statement that the gun was a .32 caliber was simply a description he offered of the gun; he had not been questioned on the caliber or type of weapon it was. In addition, when Alphonso Higgins testified that Mr. Kizeart was carrying a .25 caliber revolver to the house on Elm Street, the prosecutor asked him, "[W]hat do you mean by a .25? Do you know what that means?" Higgins responded, "[N]o." Tr.II at 253.

In our review of the evidence in the light most favorable to the government, we conclude that a jury reasonably could have decided that the two coconspirators were correct about Mr. Kizeart's possession and transportation of a firearm and ammunition but were guessing or mistaken as to the specific caliber of the gun. Moreover, as we noted earlier, the evidence necessary to convict Mr. Kizeart beyond a reasonable doubt was sufficient to support the conviction without proof of the caliber of Mr. Kizeart's firearm.

### B. *Court's Admission of Tape–Recorded Interview*

Cedric Neal testified, as a hostile witness, that he was not sure of the identity of the masked, armed robber who shot Adrian Riley. He also testified that he did not remember giving a taped interview on February 23, 1994, less than three weeks after the Elm Street shooting and robbery, in which he stated that he saw Mr. Kizeart shoot Riley. The government impeached co-conspirator Neal's statements through the testimony of Carbondale police detectives Lynn Trella and James Temple, who stated that, in their interviews with him, Neal had identified Mr. Kizeart as the one who had shot Riley. After their testimony, the government sought to play to the jury the February 23 tape-

recorded interview with Neal. Mr. Kizeart objected on the grounds that the tape recording was cumulative, would not add anything to Detective Trella's own testimony, and would "unduly emphasize the final and incriminating interview of Mr. Neal." Tr.II at 328. The court overruled the objection and granted the admission of the tape. Mr. Kizeart submits now that the trial court should have exercised its authority to exclude the taped recording as cumulative under Federal Rule of Evidence 403.[1] According to Mr. Kizeart, once the government had impeached Neal through the testimony of the two police officers who had conducted the interview in question, the admission of the tape recording of that interview was cumulative and unduly emphasized Neal's one tape-recorded statement to the detriment of the three interviews that were not recorded.

 It is within a district court's sound discretion to admit or to refuse evidence challenged as cumulative. Our court reviews a district court's evidentiary decisions under Rule 403 solely for an abuse of that discretion. *United States v. Irvin*, 87 F.3d 860, 863–64 (7th Cir.), *cert. denied*, ── U.S. ──, 117 S.Ct. 259, 136 L.Ed.2d 184 (1996); *United States v. Wiman*, 77 F.3d 981, 984 (7th Cir.1996). Chief Judge Posner recently has offered a definition of "cumulative" that assists our analysis:

> Evidence is "cumulative" when it adds very little to the probative force of the other evidence in the case, so that if it were admitted its contribution to the determination of truth would be outweighed by its contribution to the length of trial, with all the potential for confusion, as well as prejudice to other litigants, who must wait longer for their trial, that a long trial creates.

*United States v. Williams*, 81 F.3d 1434, 1443 (7th Cir.1996).

 In this case, the recorded statement added considerable probative force on the issue of Neal's veracity because it addressed the contradictions between the statements of Neal and of the detectives. It also addressed Neal's internally contradictory testimony. Neal's credibility was an issue from the moment he began his testimony. Both the prosecutor and the court continuously reminded Neal that he must answer the questions truthfully under oath. The court allowed him to discuss his concerns with his lawyer before continuing with his testimony. In spite of these admonitions in court, Neal denied that he could recall events that clearly had occurred, events of which he had direct knowledge. When he stated that he did not remember making a tape-recorded statement to Detective Trella, the government had good reason to proffer the most direct evidence, the tape of the interview, impeaching that statement. Rule 403 permits a court to exclude evidence to avoid the *"needless* presentation of cumulative evidence." Fed.R.Evid. 403 (emphasis added). In this case, the tape-recorded testimony was far from needless; it had an independent evidentiary value, a probative effect that raised that evidence from cumulative to "contribut[ory] to the determination of the truth." *See Williams*, 81 F.3d at 1443.

The district court admitted Neal's recorded statement for the limited purpose of weighing Neal's credibility as a witness. Moreover, once the defense put on its case, Neal was recalled as a witness and was given the opportunity to explain the discrepancies in his statements.[2] Therefore Neal's perspective was presented for full consideration by the jury. In the end, the credibility de-

---

1. Rule 403 of the Federal Rules of Evidence provides:
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed.R.Evid. 403.

2. Neal testified that he had made the recorded interview with Detective Trella, in which he

blamed Mr. Kizeart for the shooting, because he was angry that Mr. Kizeart was having photographs made with other women when he was supposed to be "going with" Neal's sister. When asked whether he knew who had done the shooting that night, Neal testified, "Well, I tell you it wasn't Judious Kizeart." Tr.II at 356. And when asked why he knew that it was not Mr. Kizeart, Neal replied, "Because he didn't have a mask." *Id.*

termination concerning Neal's testimony was in the hands of the jury. The district court did not abuse its discretion in admitting the taped interview of Neal for the purpose of ascertaining Neal's credibility and for the purpose of giving the jury as complete a picture of the events as possible. Accordingly, we shall not disturb the jury verdict on account of that determination.

### C. Motion for Mistrial

The trial of Mr. Kizeart began on September 25, 1995. Closing arguments were presented on the morning of September 27, and the jury began its deliberations later that morning. Right after lunch, the trial judge made the following statement in open court, with all attorneys and the defendant present, but out of the presence of the jury:

> THE COURT: The Court has been informed that there has been some graffiti written across the street that has, among one of the things written, Ju Ju [Mr. Kizeart's nickname].

Tr.IV at 2. When asked, each attorney told the judge that he was unaware of the graffiti. After the judge expressed his displeasure concerning this activity and suggested that some observers of the trial might be prosecuted as a result, he asked if the attorneys had anything else to add. Defense counsel moved for a mistrial based on "the possibility the jurors might have seen that when they came into court this morning." Tr.IV at 3. The judge, in addressing that possibility, remarked, "It just happened." *Id.* After confirming with the marshal that the graffiti had appeared over lunchtime, the judge stated, "It wasn't there before." *Id.* Implicit in the court's statement was its denial of the motion for mistrial. Defense counsel thanked the court and the proceedings concluded.

Mr. Kizeart now asserts that the district court erred in failing to hold a hearing on his motion for a mistrial. Relying on *Owen v. Duckworth*, 727 F.2d 643 (7th Cir.1984), the defendant contends that such contact by third parties regarding the ongoing trial "raises serious questions concerning the continued impartiality of the jurors." *Id.* at 646.

We review a trial court's disposition of a motion for mistrial under the abuse of discretion standard.[3] Our review of the record makes clear that Mr. Kizeart's right to an impartial jury was not jeopardized as a result of the graffiti. The court, with the assurance of the marshal in the courtroom, was certain that the jurors had not seen the graffiti. Defense counsel seemed equally reassured by the court's statement that the graffiti just appeared over lunch, and she sought no further relief from the court.

On appeal, Mr. Kizeart has raised no colorable showing of improper influence, and nothing in the record suggests that any juror was tainted by a possible view of that graffiti. *See United States v. Davis*, 15 F.3d 1393, 1407 (7th Cir.) (noting that, without a showing of improper influence, the court was not obligated to conduct a hearing to ascertain whether a particular juror had been tainted), *cert. denied*, — U.S. —, 115 S.Ct. 250, 130 L.Ed.2d 171 (1994). " '[A]s an appellate court sitting one step removed from the trial, we shall reverse the district court's decision only if we have a very strong conviction of error.' " *United States v. Plescia*, 48 F.3d 1452, 1465 (quoting *United States v. Sanders*, 962 F.2d 660, 669 (7th Cir.) (citations omitted), *cert. denied*, 506 U.S. 892, 113 S.Ct. 262, 121 L.Ed.2d 192 (1992)), *cert. denied*, — U.S. —, 116 S.Ct. 114, 133 L.Ed.2d 66 (1995). Because we have no evidence of a reasonable possibility that the jury was affected by the graffiti, we conclude that the district court did not abuse its discretion in declining to declare a mistrial or to conduct a hearing on the matter.

### Conclusion

For the reasons stated above, we affirm the judgment of the district court.

AFFIRMED.

---

**3.** *United States v. Plescia*, 48 F.3d 1452, 1465 (7th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 114, 133 L.Ed.2d 66 (1995); *United States v. Davis*, 15 F.3d 1393, 1399 (7th Cir.), *cert. de-* nied, — U.S. —, 115 S.Ct. 250, 130 L.Ed.2d 171 (1994); *Lentomyynti Oy v. Medivac, Inc.*, 997 F.2d 364, 371 (7th Cir.1993).