4 F.3d 843
 UNITED STATES of America, Plaintiff-Appellee,
v.
Joel Victor ANGULO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Fidel Barragan VARGAS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Octavio Galvez ANGULO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jaime LIMON, Defendant-Appellant.
 Nos. 92-10178, 92-10183, 92-10221, 92-10254.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 14, 1993.
Decided Sept. 15, 1993.
 
 Michael W. Berdinella, John F. Garland, W. Scott Quinlan, and Daniel L. Harralson, Fresno, CA, for defendants-appellants.
 William S. Wong, Asst. U.S. Atty., Fresno, CA, for plaintiff-appellee.
 Appeal from the United States District Court for the Eastern District of California.
 Before: LAY,* Senior Circuit Judge, HUG, and SCHROEDER, Circuit Judges.
 LAY, Senior Circuit Judge:
 
 
 1
 Joel and Octavio Angulo, Fidel Vargas and Jaime Limon were convicted following a second jury trial[1] for conspiracy to distribute cocaine and/or heroin and for possession with intent to distribute cocaine and/or heroin in violation of 18 U.S.C. Secs. 841(a)(1) and 846. We now remand to the district court for an evidentiary hearing relating to the defendants' motion for mistrial based upon claims of jury tampering. We find no merit to the other claims raised on appeal.
 
 
 2
 Limon asserts several evidentiary errors. These arguments are without merit.[2] We also find no merit in Limon's argument that the district court abused its discretion in denying his motions to sever and for a new trial and erred in denying his Rule 29 motion for acquittal based on insufficiency of the evidence.[3] We reject as well the argument by defendants Joel and Octavio Angulo that the district court erred in denying them downward adjustments based upon acceptance of responsibility.[4]
 
 
 3
 We turn now to the question of jury tampering. During the course of the trial, a juror, Ms. Zodolske, received a telephone call at her home in which the caller said, "I know where you live." The next day, Ms. Zodolske asked the other jurors if they had received a strange phone call. She then explained the circumstances of the call to them, and several of them encouraged her to inform the judge. After bringing the issue to the judge's attention, Ms. Zodolske was called into the judge's chambers with the court reporter present but not the attorneys. The judge asked her about the call. She informed the judge that she had told the other jurors about the call. She admitted that she was scared and that she probably would not want twelve jurors like herself to sit on a case if she were the defendant. The judge thereafter excused Ms. Zodolske from the jury.
 
 
 4
 Later, the following dialogue with court and counsel took place:
 
 
 5
 THE COURT: She merely asked the other jurors if they had received such a call. They said no. That juror, if you will recall, also is the one who has the wedding in Davis on the 13th. She was not completely sure she could be fair. I concluded on the basis of my conversation that the other jurors were not affected, ... and I dismissed her.
 
 
 6
 MR. CHAVEZ: Your Honor, then she did convey that to the other jurors.
 
 
 7
 THE COURT: Mr. Chavez.
 
 
 8
 MR. CHAVEZ: Yes, sir.
 
 
 9
 THE COURT: She said she asked the other jurors if they received any strange calls last night. It's all on the reporter's transcript. If you want to buy a transcribed version, you may do so.
 
 
 10
 The judge then abruptly denied defense counsel's motion for a mistrial, stating, "All motions made or anticipated are denied."[5] He did not explain Ms. Zodolske's sudden absence to the other jurors, did not question the remaining jurors about possible bias, and did not give a curative instruction.
 
 
 11
 In Remmer v. United States, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), the Supreme Court remanded to the district court, some two years after the trial, to hold an evidentiary hearing based upon a defendant's motion for a new trial to determine whether improper contact with a juror was harmless to the defendant. Id. at 229, 74 S.Ct. at 451. The Court observed that there exists a presumption of prejudice which the government must rebut in cases involving jury tampering:
 
 
 12
 In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.
 
 
 13
 Id. (citations omitted).
 
 
 14
 The Remmer Court found that the trial judge's failure to conduct an evidentiary hearing at the time was error. Id. at 229-30, 74 S.Ct. at 451. It therefore reversed the court of appeal's holding that the district court did not abuse its discretion in failing to hold a hearing, observing as follows:
 
 
 15
 The integrity of jury proceedings must not be jeopardized by unauthorized invasions. The trial court should not decide and take final action ex parte on information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.
 
 
 16
 Id.
 
 
 17
 In the Remmer case, only one juror was involved, but that juror was allowed to remain on the venire. In the present case, Ms. Zodolske told other jury members about the threatening telephone call. The judge then removed Ms. Zodolske from the jury, an event obviously noticed by the remaining jurors. Under these facts, the government has a difficult burden to overcome the obvious possible prejudice. Yet here, as in Remmer, the trial judge conclusorily found no prejudice without holding any hearing whatsoever.
 
 
 18
 It is true, of course, that not every improper ex parte contact with a juror requires a mistrial. As the Seventh Circuit has noted, "Our system of justice has not delegated to every reprobate the power to effect a mistrial." United States v. Williams, 737 F.2d 594, 612 (7th Cir.1984), cert. denied, 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985). However, the Supreme Court has stressed that the remedy for allegations of jury bias is a hearing, in which the trial court determines the circumstances of what transpired, the impact on the jurors, and whether or not it was prejudicial. See Remmer v. United States, 347 U.S. 227, 229-30, 74 S.Ct. 450, 98 L.Ed. 654 (1954); Smith v. Phillips, 455 U.S. 209, 216, 102 S.Ct. 940, 945, 71 L.Ed.2d 78 (1982).
 
 
 19
 An evidentiary hearing is not mandated every time there is an allegation of jury misconduct or bias. See, e.g., United States v. Langford, 802 F.2d 1176, 1180 (9th Cir.1986), cert. denied, 483 U.S. 1008, 107 S.Ct. 3235, 97 L.Ed.2d 740 (1987). Rather, in determining whether a hearing must be held, the court must consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source. See Hard v. Burlington N.R.R., 812 F.2d 482, 485 (9th Cir.1987).
 
 
 20
 Considering these factors, we deem it clear that the district court abused its discretion in failing to hold a hearing under the facts presented in this case. Ms. Zodolske informed the judge that she had received a threatening phone call and that she had told the other jurors about it. The judge excused Ms. Zodolske from the jury, stating that "[p]eople don't go through life receiving calls like this ... and the most logical activity for you to tie it up with is jury duty."[6] However, the trial judge never explained Ms. Zodolske's absence to the other jurors, who knew she had received the threatening telephone call, nor did he question the other jurors about what effect the threat to Ms. Zodolske and her subsequent dismissal from the venire had on them. Under these facts, the remaining jury members may well have believed that defendants were responsible for the threat and, based on that assumption, may have decided the merits of the case on that basis. See United States v. Shapiro, 669 F.2d 593, 601 (9th Cir.1982) (court must guard against jury assuming one of the parties was responsible for an attempted jury tampering); United States v. Williams, 737 F.2d 594, 613 (7th Cir.1984) (by talking with jurors, judge acted to avoid "alarming possibility" that jurors would mistakenly believe threatening call was from either party).
 
 
 21
 Here, the potential for bias is so strong that the judge was obliged at a minimum to hold a hearing.[7] In cases where a bribe or a threat to a juror was communicated to the other jurors, the trial judge must fully examine the effect of the threat on the remaining jurors. See, e.g., United States v. Sublet, 644 F.2d 737, 740-41 (8th Cir.1981) (following comment by person in courtroom to one juror, who then relayed it to four other jurors, district court held hearing with all affected jurors); United States v. Norton, 700 F.2d 1072, 1076 (6th Cir.) (following threatening telephone conversation to juror which was communicated to other jurors, judge held hearing with all affected jurors), cert. denied, 461 U.S. 910, 103 S.Ct. 1885, 76 L.Ed.2d 814 (1983). This is not to say that ordering a mistrial must necessarily follow. See Sublet, 644 F.2d at 741 (comment to juror was not viewed by any jurors as frightening; curative instruction was properly done); Norton, 700 F.2d at 1076 (jurors viewed call as "harmless prank" and were not swayed by the contact). However, without a hearing, a district court does not have the essential facts to properly evaluate a defendant's motion for mistrial.[8]
 
 
 22
 The government suggests that the need for a hearing was somehow negated by defense counsel's failure to specifically request one. We disagree. First, it is clear from the case law that the only motion defendant need make to trigger the need for a hearing is a motion for a new trial or mistrial, which defendants made in this case. Upon that motion, the district court was obliged to inquire as to the circumstances, determine whether the affected jurors remained impartial, and then decide whether the mistrial should be granted. See Smith v. Phillips, 455 U.S. 209, 212-13, 102 S.Ct. 940, 943-44, 71 L.Ed.2d 78 (1982) (evidentiary hearing properly held on question of jury bias upon defendant's motion to set aside the verdict). Indeed, in Smith v. Phillips, the Court stressed that "a trial judge [must be] ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." Id. at 217, 102 S.Ct. at 946. Because even a single partial juror violates a defendant's constitutional right to a fair trial, a judge must always act to diligently preserve that right.[9]
 
 
 23
 Accordingly, we remand to the district court to hold an evidentiary hearing to determine whether the jurors who knew of the threat were able to act impartially and without bias. The government will be required to show that the threatening telephone call was harmless beyond a reasonable doubt to defendants. United States v. Littlefield, 752 F.2d 1429, 1431-32 (9th Cir.1985). If the government cannot make that showing, a new trial should be ordered.
 
 
 24
 IT IS SO ORDERED.
 
 
 
 *
 Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 This court earlier granted a new trial for the same defendants on evidentiary rulings in United States v. Vargas, 933 F.2d 701 (9th Cir.1991)
 
 
 [2]
 Limon argues the district court erred in refusing to admit an affidavit of FBI Agent Cook in support of his theory that other persons supplied the cocaine. Even assuming the judge erred, any error was harmless. The record shows that Limon introduced other evidence to support this theory. Thus, the affidavit statements "would not have added significantly to the jury's deliberations." See United States v. Lopez-Alvarez, 970 F.2d 583, 588 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 504, 121 L.Ed.2d 440 (1992). Limon also argues that the district court erred in refusing to admit an affidavit by Joel Angulo stating that Joel Angulo never introduced or identified Limon to Ramirez. We think the district court did not abuse its discretion in excluding the affidavit because the affidavit does not contain the requisite guarantees of trustworthiness required for admission under the catchall hearsay exception. We also reject Limon's argument that certain coconspirator testimony should have been excluded. It is clear that the government presented sufficient evidence to establish a conspiracy and Limon's connection to it. We likewise reject Limon's argument that the district court erred in refusing to introduce statements made during the first trial. Limon was permitted to read into the record testimony which indicated that Ramirez had difficulty identifying Limon. Any other evidence Limon sought to introduce--statements by the court and counsel--were largely irrelevant. Finally, Limon argues that the admission of the photographic line-up at trial was error, but he failed to object at trial. We therefore find that he has waived his objection
 
 
 [3]
 With regard to the motion to sever, the district court properly instructed the jury to consider the evidence against each defendant individually. We believe this adequately safeguarded Limon from any prejudice. As to the motion for new trial, although the district court may have erroneously read the record, there were sufficient reasons upon which to base the court's decision. See United States v. Stauffer, 922 F.2d 508, 516 (9th Cir.1990)
 
 
 [4]
 Octavio Angulo refused to discuss his case with the probation officer and failed to express his acceptance of responsibility in any fashion whatsoever. We have previously held similar conduct to be sufficient to deny a downward adjustment for acceptance of responsibility. See United States v. Aichele, 941 F.2d 761, 767 (9th Cir.1991). Joel Angulo did submit a letter admitting his part in the offense, but the district court found that the timing of the statement indicated a lack of sincerity. We have upheld a denial in similar circumstances. See United States v. Restrepo, 930 F.2d 705, 710 (9th Cir.1991)
 
 
 [5]
 At this point, according to all counsel, the judge was walking off the bench and out the courtroom door. It is puzzling to us that a trial judge cannot extend common courtesy and fairness to trial counsel. However, lack of courteous judicial demeanor rises to a different level when such conduct denies as well a fundamental right to a defendant in a criminal proceeding
 
 
 [6]
 Although the judge mentioned, as counsel knew from the earlier voir dire, that Ms. Zodolske had a wedding to attend that potentially could conflict with the jury's deliberations, the judge's statement makes clear that he based the dismissal of Ms. Zodolske as a juror upon the intimidating telephone call
 
 
 [7]
 In cases in which courts have not required an evidentiary hearing, the facts have shown clearly that the alleged misconduct or bias simply could not have affected the verdict. For example, in United States v. Langford, 802 F.2d 1176 (9th Cir.1986), the defendant complained that the jurors had determined that one witness (Mr. Wood) was his probation officer (Mr. Wood was seen entering and exiting the probation office in view of the jury), which would suggest that defendant had a prior criminal record. The court found no hearing necessary because "[t]he tenuous connection between Wood's emergence from the probation office and knowledge of Langford's prior conviction is insufficient to support a finding of a reasonable possibility that the event complained of could have affected the verdict." Id. at 1180. Similarly, in United States v. Halbert, 712 F.2d 388 (9th Cir.1983), cert. denied, 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984), the court found no hearing was required although jurors had reviewed a newspaper article about defendant's beach house. The court pointed out that the jurors had heard considerable evidence about the beach house and defendant's life style, and that there was "no reasonable possibility that the newspaper article affected the verdict." Id. at 389
 
 
 [8]
 The case of Owen v. Duckworth, 727 F.2d 643 (7th Cir.1984), is particularly instructive. There, a juror received a threatening telephone call. In an in camera hearing, she informed the state trial judge about the call, but insisted she could remain fair. The judge cautioned her not to tell the other jurors about the call and allowed her to remain on the venire. Id. at 644. After the trial, it was discovered that the juror had communicated the threat to the other jurors during deliberations. The judge thereafter held a hearing, but terminated the hearing prematurely. Id. On petition for writ of habeas corpus, the Seventh Circuit initially remanded to the federal district court for a "full and fair hearing." Id. at 645. At the hearing, it became clear that six of the remaining eleven jurors knew about the call, three of them attributed it to defendant, and at least two stated they were frightened by it. The Seventh Circuit concluded that the government had failed to show the contact was harmless and therefore ordered the writ to issue. Id. at 647-48
 
 
 [9]
 As previously indicated, the judge abruptly terminated discussion about any jury bias, preventing the defendants from pursuing the issue