**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

  v.

RICARDO RUIZ MONTES,
   *Defendant-Appellant.*

No. 08-10539

D.C. No.
1:06-cr-00342-
OWW

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

  v.

LUKE SCARMAZZO,
   *Defendant-Appellant.*

No. 08-10559

D.C. No.
1:06-vt-00342-
OWW-1

OPINION

Appeal from the United States District Court
for the Eastern District of California
Oliver W. Wanger, District Judge, Presiding

Argued and Submitted
August 31, 2010—San Francisco, California

Filed January 4, 2011

Before: Betty B. Fletcher, Richard C. Tallman, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Tallman

## COUNSEL

Gary L. Huss, Esq., (argued), Law Offices of Gary Huss, Fresno, California, for defendant-appellant Ricardo Montes; Katherine L. Hart, Esq., (argued), Law Offices of Katherine L. Hart, Fresno, California, for defendant-appellant Luke Scarmazzo.

Kathleen A. Servatius, Assistant U.S. Attorney, (argued), Office of the U.S. Attorney, Fresno, California, Elana Landau, Esq., Office of the U.S. Attorney, Fresno, California, for plaintiff-appellee United States of America.

## OPINION

TALLMAN, Circuit Judge:

Upon a post-verdict allegation of juror misconduct, a district court should ordinarily hold an evidentiary hearing to

determine the nature of the misconduct and whether or not there was a reasonable possibility that it could have affected the jury's verdict. However, an evidentiary hearing is not mandated every time there is an allegation of juror misconduct. Because this is one of the cases where a district court could adequately make its determination without the benefit of an evidentiary hearing, we affirm the judgment of the district court.

## I

In 2006, Defendants-Appellants Ricardo Montes and Luke Scarmazzo ("Appellants") were charged with conducting a continuing criminal enterprise, 21 U.S.C. § 848, manufacturing marijuana, 21 U.S.C. § 841(a)(1), aiding and abetting, 18 U.S.C. § 2, and possessing marijuana with intent to distribute, 21 U.S.C. § 841(a)(1). At trial, the prosecution presented overwhelming evidence that Appellants co-founded and openly ran a marijuana dispensary in Modesto, California, and that they made $9.2 million in sales over a two-year period. Overwhelming evidence also indicated that during those two years Appellants supervised and employed between eight and fourteen individuals specifically to manufacture, package, guard, and distribute marijuana. During the investigation, law enforcement officials made ten controlled buys and seized more than fifty pounds of marijuana and more than 1,100 marijuana plants. Many times during their two years in business, Appellants openly admitted to law enforcement officials that they ran a marijuana dispensary. At trial, Appellants repeated these admissions on the witness stand.

Not surprisingly, the jury found Appellants guilty of violating 21 U.S.C. § 848, which requires the commission of a continuing series of at least three federal felony narcotic offenses undertaken in concert with five or more other persons with respect to whom the defendant occupies a position of organizer, supervisor, or any other type of management, and from which the defendant obtains substantial income or resources.

The jury also found Appellants guilty of manufacturing marijuana, 21 U.S.C. § 841(a)(1), aiding and abetting, 18 U.S.C. § 2, and possessing marijuana with intent to distribute, 21 U.S.C. § 841(a)(1).

After the verdict, Appellants filed a motion for a new trial on the basis of juror misconduct. Appellants later amended their motion and submitted declarations from two jurors. Appellants alleged that Juror No. 3 had read an online "summary" of an article in the May 12, 2008, edition of the *San Francisco Chronicle* entitled "Next President Might Be Gentler on Pot Clubs," published shortly before deliberations began. The juror declarations suggested that Juror No. 3 discussed the summary with Juror No. 5 during deliberations. It is clear that Juror No. 3 had not read the entire article, only the summary appearing on the *San Francisco Chronicle*'s online front page, www.sfgate.com. Neither the summary nor the article itself was introduced into the jury room.

The district court held a hearing at which it considered the juror declarations in detail, eliciting argument from both Appellants and the prosecution regarding the potentially injurious impact of the purported misconduct. The court declined to call Juror No. 3 as a witness, invoking Federal Rule of Evidence 606(b), which prohibits inquiry into a juror's subjective thought processes in connection with the verdict.

The district court considered the entirety of the article—even though the jury never saw it—and concluded that it was not prejudicial because, by suggesting that a new presidential administration would be more accepting of marijuana use, it had the effect of supporting the Appellants' position. The court then denied Appellants' motion for a new trial. Appellants timely appealed, arguing that (1) the district court erred by failing to hold an "evidentiary hearing," and (2) the district court erred by denying the motion for a new trial.[1]

---

[1] We resolve Appellants' other challenges in an unpublished memorandum disposition filed concurrently with this opinion.

## II

Whether or not extraneous information could have affected the jury's verdict bears on the propriety of the district court's decision not to hold an evidentiary hearing. *See United States v. Duktel*, 192 F.3d 893, 899 (9th Cir. 1999). We review the district court's decision not to hold an evidentiary hearing and its denial of a motion for a new trial for abuse of discretion. *United States v. Bussell*, 414 F.3d 1048, 1054 (9th Cir. 2005). A district court abuses its discretion if it reaches a result that is "illogical, implausible, or without support in inferences that may be drawn from facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc).

## III

Fundamental to our judicial system's administration of justice is a fair and impartial jury. *United States v. Bagnariol*, 665 F.2d 877, 884 (9th Cir. 1981). A jury should reach a verdict that is based solely upon the evidence admitted at trial. *Id.* A juror's communication of extraneous information implicates the Confrontation Clause. *Sassounian v. Roe*, 230 F.3d 1097, 1108 (9th Cir. 2000). "The juror in effect becomes an unsworn witness, not subject to confrontation or cross examination." *Id.* If a court determines that a juror has improperly brought extraneous information to the jury's attention, the inquiry must then focus on whether "there is a reasonable possibility that the extraneous information could have affected the verdict." *United States v. Keating*, 147 F.3d 895, 900 (1998). This inquiry is an objective one: "we need not ascertain whether the extraneous information actually influenced any specific juror." *Id.* at 901-02.

## A

[1] Allegations of juror misconduct implicate grave interests. The Supreme Court has stressed that the remedy for such allegations is a hearing at which "the trial court determines

the circumstances of what transpired, the impact on the jurors, and whether or not it was prejudicial." *Dutkel*, 192 F.3d at 899 (internal quotation marks omitted). Upon an allegation of juror misconduct in this circuit, trial courts should ordinarily hold an evidentiary hearing at which the court hears admissible juror testimony and determines "the precise nature of the extraneous information." *Bagnariol*, 665 F.2d at 885. While such a hearing is preferable, "[a]n evidentiary hearing is not mandated *every* time there is an allegation of jury misconduct or bias." *United States v. Angulo*, 4 F.3d 843, 847 (9th Cir. 1993). "Rather, in determining whether [an evidentiary] hearing must be held, the court must consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source." *Id.* Based on the record before us, we conclude an evidentiary hearing was unnecessary in this case.

**[2]** "There is no bright line test for determining whether a defendant has suffered prejudice from an instance of juror misconduct." *Sassounian*, 230 F.3d at 1109. However, we have identified five factors that are relevant to our inquiry:

> (1) whether the extrinsic material was actually received, and if so, how; (2) the length of time it was available to the jury; (3) the extent to which the jury discussed and considered it; (4) whether the extrinsic material was introduced before a verdict was reached, and if so, at what point in the deliberations it was introduced; and (5) any other matters which may bear on the issue of the reasonable possibility of whether the introduction of extrinsic material affected the verdict.

*Bayramoglu v. Estelle*, 806 F.2d 880, 887 (9th Cir. 1986). While these factors guide our analysis, "no one of these factors is dispositive," *Dickson v. Sullivan*, 849 F.2d 403, 406 (9th Cir. 1988), and the "ultimate question is whether it can be concluded beyond a reasonable doubt that extrinsic evi-

dence did not contribute to the verdict," *Bayramoglu*, 806 F.2d at 887 (internal quotation marks omitted). We have also pointed to several factors that can "suggest that the potential prejudice of the extrinsic information was diminished in a particular case." *Jeffries v. Wood*, 114 F.3d 1484, 1491 (9th Cir. 1997) (en banc), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997). Among those factors is "whether the statement was insufficiently prejudicial given the issues and evidence in the case." *Id.* at 1492 (footnotes omitted).

**[3]** Upon an inquiry into the validity of a verdict, a trial court and a court of appeals may consider only evidence admissible under Federal Rule of Evidence 606(b). Under that rule, a juror may testify as to "*whether* extraneous prejudicial information was improperly brought to the jury's attention," but not as to "any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict . . . or concerning the juror's mental processes in connection therewith." Fed. R. Evid. 606(b) (emphasis added). Jurors therefore may not be questioned about their deliberative process or the subjective effects of extraneous information. *Bagnariol*, 665 F.2d at 884. Neither the trial court nor the court of appeals may consider such testimony. *Id.* at 884-85. In some cases, such as this one, these constrictions can severely limit the utility of holding an evidentiary hearing at which jurors may testify.

In this case, the district court held a hearing on the motion for a new trial. At the hearing the district court heard argument from all parties and considered the juror declarations and the *San Francisco Chronicle* article in detail. This hearing, however, did not constitute a full evidentiary hearing as contemplated by our precedent because the district court precluded live juror testimony. Nevertheless, because the district court could conclusively find that "the seriousness of the alleged misconduct or bias" was minimal, and because "the

content of the allegations" could not have prejudiced Appellants, we see no abuse of discretion in the district court's decision to preclude live juror testimony. *See Angulo*, 4 F.3d at 847. Nor do we see an abuse of discretion in striking those portions of the proffered declarations that violated Federal Rule of Evidence 606(b).

**[4]** The district court had any and all admissible information it needed from the declarations, the *San Francisco Chronicle* article itself, and written and oral argument from the parties. The declarations conclusively answered *whether* extraneous information had been improperly brought to the jury's attention. *See* Fed. R. Evid. 606(b). The *San Francisco Chronicle* article established the nature of that information. The only question left to be answered was *how* the summary of that article could have influenced the verdict, and that is a question that cannot be answered through juror testimony. *See id.* Any testimony from Juror No. 3 either would have been cumulative of the statements in his declaration or would have impermissibly touched upon the subjective effect of the extraneous information on his mental processes. *See id.*

**[5]** In addition, the district court could evaluate all five *Bayramoglu* factors without juror testimony. From the juror declarations, the district court knew: (1) the information—i.e., the headline, "Next President Might Be Gentler on Pot Clubs" and a juror's recollection of a short summary of the article— was actually received by the entire jury when Juror No. 3 and Juror No. 5 discussed it openly, but that the article itself was never received by the jury; (2) the jury had access to the summary information for the entirety of their deliberations, but never had access to the article; (3) the summary information was in fact discussed during deliberations, but the article was not; (4) the summary information was introduced before a verdict was reached, but the article was not; and (5) the nature of the summary information and the nature of the article itself. Therefore, the district court did not exceed the permissible

bounds of its discretion by denying Appellants an evidentiary hearing.

**B**

Turning to the merits, even though the first four *Bayramoglu* factors seemingly weighed in favor of granting a new trial, the district court ruled that the extraneous information was "insufficiently prejudicial given the issues and evidence in the case," *Jeffries*, 114 F.3d at 1492, and that there was therefore no "reasonable possibility" that the extrinsic material affected the verdict, *Dickson*, 849 F.2d at 406. We agree.

**[6]** Our cases have stressed "the nature of the extraneous information" when determining the possibility that the information affected the verdict. *Id.* at 406-07. In fact, "we place great weight on the nature of the extraneous information that has been introduced into deliberations." *Sassounian*, 230 F.3d at 1109. Here, while we consider all relevant factors, it is the non-prejudicial nature of the extraneous information that tilts the scales against granting Appellants a new trial.

**[7]** An article headline suggesting that the "Next President Might Be Gentler on Pot Clubs" could have no impact on the jury's evaluation of Appellants' guilt or innocence, no matter how long the jury had access to this information. Overwhelming evidence of Appellants' guilt was introduced at trial. Appellants themselves openly admitted to running the marijuana dispensary in question during their testimony. The conduct to which Appellants admitted was made criminal under federal law by the Controlled Substances Act. The possibility that a future president might choose not to prosecute such criminal conduct did not have any logical bearing on a determination of whether or not Appellants engaged in that criminal conduct.

**[8]** When finding reversible prejudice, we have described "a direct and rational connection between the extrinsic mate-

rial and a prejudicial jury conclusion, as distinguished from a connection that arises only by irrational reasoning." *Bagnariol*, 665 F.2d at 885. Here, there is simply no rational connection between the extraneous information and the jury's obligation to determine whether or not Appellants had operated a continuing criminal enterprise, manufactured marijuana, aided and abetted, or possessed marijuana with intent to distribute. Appellants would have us reason that the extraneous information prejudiced them because it allowed the jury to speculate that the sentence imposed after the verdict would be lenient. Aside from the fact that the jury was prohibited from considering any potential sentence at all in determining guilt or innocence, this proposed connection is not "direct and rational." *Id.* Criminal sentencing was referenced neither in the summary information introduced to the jury nor in the entirety of the article itself, and there is no clear reason why a potential future change in policy regarding which crimes to prosecute should have any impact on the sentencing of a current defendant.

This case is unlike those in which we have previously found that there was a reasonable possibility that extraneous information could have affected the jury's verdict. *See United States v. Littlefield*, 752 F.2d 1429, 1432 (9th Cir. 1985) (holding that a new trial for tax fraud involving illegal shelters was required where a juror brought into the jury room a *Time Magazine* article highlighting fraudulent tax schemes as a problem of national concern and deploring light sentences imposed on participants); *Gibson v. Clanon*, 633 F.2d 851, 855 (9th Cir. 1980) (holding that reversal was required where jurors obtained evidence regarding the rarity of defendant's blood type from a medical encyclopedia notwithstanding that the trial court previously ruled that such evidence was inadmissible at trial).

Instead, the facts in this case are much more like the facts underlying our decision in *Bagnariol*. There, we concluded that information gathered by a juror at a public library and

communicated to other jurors was not logically connected to material issues in the case. *Bagnariol*, 665 F.2d at 888. The juror had searched several business publications for references to a nonexistent company created by government agents as a front for a Federal Bureau of Investigation undercover operation. *Id.* at 883. The juror found no such company and told other jurors of his research finding. *Id.* The nonexistence of the fictitious company was not in dispute and was irrelevant to any material issue in the case. *Id.* at 884. We concluded that to find a material connection between the extraneous information and the jury's verdict "would require an assumption that the jury members reached an irrational conclusion, lacking in common-sense logic." *Id.* at 888. Because the research "merely confirmed what any reasonable juror already knew," we held that reversal was not required, despite the fact that the extraneous information had been communicated to several jurors. *Id.*

**[9]** The same is true here. A future president's posture toward marijuana prosecutions was not relevant to any material issue in the case. Presidents may choose which crimes to prioritize in directing Executive Branch law enforcement efforts. This fact was not in dispute at trial. The possibility that a future president *might* choose not to devote federal resources to the prosecution of a certain class of crimes would merely confirm what any reasonable juror already knew. But more to the point, to find a material connection between the extraneous information in this case and the jury's determination of guilt or innocence would require an assumption that the jury members reached an irrational conclusion lacking in common-sense. We are unwilling to make such an assumption. Despite the fact that the extraneous information was introduced during deliberations, we agree with the experienced trial judge that it could not have affected the jury's verdict.

**IV**

The district court did not abuse its discretion by precluding Juror No. 3 from testifying or by denying Appellants' motion for a new trial.

**AFFIRMED.**