**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JAN 31 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



|  |  |
|---|---|
| FERRARI MOODY,<br><br>    Petitioner - Appellant,<br><br> v.<br><br>KEVIN CHAPPELL, Warden;<br>CALIFORNIA DEPARTMENT OF<br>CORRECTIONS AND<br>REHABILITATION,<br><br>    Respondents - Appellees. | No. 10-55842<br><br>D.C. No. 2:06-CV-06557-GHK-VBK<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
George H. King, Chief District Judge, Presiding

Argued and Submitted December 2, 2013
Pasadena, California

Before: D.W. NELSON, WARDLAW, and RAWLINSON, Circuit Judges.

 Ferrari Moody ("Moody") appeals the dismissal of his federal habeas

petition with prejudice. We have jurisdiction pursuant to 28 U.S.C. § 2253, and we

affirm.

---

  [*]  This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

The district court did not err in dismissing Moody's claim that the state trial court denied him his due process right to a fair trial by an impartial jury.

Jury tampering is "an effort to influence the jury's verdict by threatening or offering inducements to one or more of the jurors." *United States v. Dutkel*, 192 F.3d 893, 895 (9th Cir. 1999). "In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial *about the matter pending before the jury* is, for obvious reasons, deemed presumptively prejudicial[.]" *Remmer v. United States*, 347 U.S. 227, 229 (1954). Here, however, the contact the spectators made with Juror No. 7 did not concern the criminal trial pending before the jury, *id.* at 229, nor did it involve coercion, bribery, threats or inducements, *Dutkel*, 192 F.3d at 895, 897. Moreover, Juror No. 7 did not know who the spectators were, or if they were "friends" with Moody or the victim.

Thus, in denying this claim, the state court did not apply clearly established federal law in an objectively unreasonable manner. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); 28 U.S.C. § 2254(d)(1). Nor did the state court unreasonably determine the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2); *see also Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004) ("[I]t is not enough that we could reverse in similar circumstances if this

were an appeal from a district court decision. Rather, we must be convinced that any appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record."). "A state court's determination that a claim lacks merit precludes federal relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). That is the case here.

The district court also did not err in dismissing Moody's ineffective assistance of counsel claims. Even if counsel erred, Moody has not shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

Because we affirm the dismissal of the petition on the merits, we need not reach the issue of procedural default. *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002).

**AFFIRMED.**

*Moody v. Chappell*, No. 10-55842

WARDLAW, Circuit Judge, dissenting:

I respectfully dissent. I disagree with the majority's conclusion that no jury tampering occurred in this case. Accordingly, I would reverse the district court's denial of Moody's habeas petition.[1]

The majority affirms the district court's dismissal of Moody's habeas petition, which alleged a violation of his due process right to a fair trial by an impartial jury. However, this is a clear case of jury tampering. It is undisputed that Juror No. 7 was followed on her way home from the courthouse by two men, who she recognized had been seated in the gallery that day. She reported to the court that the two men shouted at her to try and get her attention when they pulled up next to her at a red light. The juror altered her route home, and she stated that the experience "made [her] very uncomfortable." Those two men were allowed to stay in the gallery for the remainder of the trial. In addition, Juror No. 7 stated that the same two men who followed her from court "had been trying to talk to people when we were outside," meaning that the men had attempted to speak with other jurors. When pressed by the court, she concluded that she could be "fair to the

---

[1] I agree with the majority's conclusion regarding Moody's ineffective assistance of counsel claims.

1

guy" in her decision-making process, but she also said, "I think having them here, I might feel uncomfortable in general. I might not be able to sit still because just knowing that they're here and they know who I am." Despite the *prosecutor's* repeated requests that the court interview the whole jury to determine the extent of any potential tampering, the court refused.

Jury tampering is "presumptively prejudicial," *Remmer v. United States*, 347 U.S. 227, 229 (1954), and these events are a prima facie example of jury tampering. The majority concludes that no jury tampering occurred in this case because the contact did not concern the matter pending before the jury, the contacts did not involve coercion, bribery, threats or inducements, and Juror No. 7 did not know with whom the men who followed her home were associated. These conclusions involve not only a strained reading of the facts, but also require the majority to ignore the law.

Relying explicitly upon *Remmer*, we have found jury tampering based on contacts far more innocuous than those experienced by Juror No. 7. In *United States v. Simtob*, for example, we found jury tampering where the defendant had merely been "eye-balling" a juror during trial. We held:

> Despite the lack of evidence that Simtob had any direct contact with the
> jury, the presumption of prejudice applies here because even indirect
> coercive contacts that could affect the peace of mind of the jurors could

2

give rise to the Remmer presumption. That at least one juror's peace of mind was affected is obvious from the district court's assertion that the juror claimed he or she felt threatened by Simtob. The Government, therefore, bears the burden of rebutting the presumption of prejudice.

485 F.3d 1058, 1064 (9th Cir. 2007) (internal citations and quotation marks omitted)). If "eye-balling" constitutes a threat, then the actions of the spectators in the gallery of following Juror No. 7 home and shouting at her did as well.

Second, as our cases applying *Remmer* make clear, juror tampering requires neither that a juror know which party is responsible for the tampering nor that the threatening behavior explicitly reference the outcome of the case. In *United States v. Dutkel*, 192 F.3d 893, 898-99 (9th Cir. 1999), we held that a co-defendant's bribery and coercion of a juror as to the co-defendant's case alone was prima facie jury tampering with respect to Dutkel as well, even though during the coercion of the juror, the co-defendent's henchmen specifically stated, "We don't care about Dutkel." *Id.* at 897. The coercion in that case was explicitly divorced from the outcome of Dutkel's trial, and yet we found jury tampering had occurred because the "intervention interfered with the jury's deliberations by distracting one or more of the jurors, or by introducing some other extraneous factor into the deliberative process." *Id.*

*Dutkel* was not an outlier case; rather, it flowed from a line of cases applying

3

*Remmer* in the jury tampering context. In *Dutkel* we relied upon our holding in *United States v. Angulo*, 4 F.3d 843 (9th Cir. 1993), for the proposition that "even indirect coercive contacts that could affect the peace of mind of the jurors give rise to the *Remmer* presumption." 192 F.3d at 897. The contact in *Angulo* involved nothing more than an anonymous phone call to one of the jurors in which the caller said, "I know where you live." 4 F.3d at 846. The caller never identified himself and never mentioned the "matter pending before the jury" on which the juror served. *Id.* Even though there were *no* facts tying the call to the case, the trial judge made the obvious connection between the phone call and the juror's service, stating, "[p]eople don't go through life receiving calls like this . . . and the most logical activity for you to tie it up with is jury duty." *Id.* at 847. So too, a woman does not often go through life having two strange men, who had been sitting in the gallery during trial, follow her on her way home and repeatedly attempt to get her attention. Juror No. 7 made the obvious connection between her jury service and the men who followed her home as evidenced by her decision to report the incident to the judge. It is inconceivable that the trial court—and the panel majority—cannot.

Even after the trial court in *Angulo* properly dismissed the juror who had received the phone call, we concluded that the contact at issue gave rise to the

4

*Remmer* presumption because the trial judge never explained the juror's absence to the other jurors and the other jurors knew of the phone call. *Id.* at 847. If second-hand knowledge of a phone call in which the caller did not identify which party he represented and failed to mention the juror's case gives rise to the *Remmer* presumption, then surely the contact directly experienced by Juror No. 7 warrants the same. Moreover, the trial court in this case never examined Juror No. 7 to find out whether she had told other jurors about the experience, nor did it admonish her not to do so.

Jury tampering is "presumptively prejudicial," *Remmer*, 347 U.S. at 229, and places "a heavy burden on the government to rebut the presumption by proving that the error was harmless beyond a reasonable doubt." *United States v. Rutherford*, 371 F.3d 634, 641 (9th Cir. 2004); *see also Remmer*, 347 U.S. at 229 ("[T]he burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.").

The state courts either unreasonably determined the facts in light of the evidence presented in the state court proceeding or applied clearly established federal law in an objectively unreasonable manner. Because the state courts summarily denied Moody's habeas petitions, it is unclear which of these errors

5

occurred. If on the one hand, the state courts determined that this was not jury tampering, then they unreasonably determined the facts, even if they did apply the correct law. If on the other hand, the state courts concluded based on the facts that jury tampering occurred, then it is just as evident that they have applied clearly established federal law in an objectively unreasonable manner. *Remmer*, decided in 1954, holding that jury tampering is presumptively prejudicial, is about as clearly established as federal law can be. As such, the government must meet the burden of proving that contact with the juror was harmless. This has not and cannot be done. Either scenario warrants federal habeas relief.