WARDLAW, Circuit Judge,
dissenting:
I respectfully dissent. I disagree with the majority’s conclusion that no jury tampering occurred in this case. Accordingly, I would reverse the district court’s denial of Moody’s habeas petition.[1]
The majority affirms the district court’s dismissal of Moody’s habeas petition, which alleged a violation of his due process right to a fair trial by an impartial jury. However, this is a clear case of jury tampering. It is undisputed that Juror No. 7 was followed on her way home from the courthouse by two men, who she recognized had been seated in the gallery that day. She reported to the court that the two men shouted at her to try and get her attention when they pulled up next to her at a red light. The juror altered her route home, and she stated that the experience “made [her] very uncomfortable.” Those two men were allowed to stay in the gallery for the remainder of the trial. In addition, Juror No. 7 stated that the same two men who followed her from court “had been trying to talk to people when we were outside,” meaning that the men had attempted to speak with other jurors. When pressed by the court, she concluded that she could be “fair to the guy” in her decision-making process, but she also said, “I think having them here, I might feel uncomfortable in general. I might not be able to sit still because just knowing that they’re here and they know who I am.” Despite the prosecutor’s repeated requests that the court interview the whole jury to determine the extent of any potential tampering, the court refused.
Jury tampering is “presumptively prejudicial,” Remmer v. United States, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954), and these events are a prima facie example of jury tampering. The majority concludes that no jury tampering occurred in this case because the contact did not concern the matter pending before the jury, *590 the contacts did not involve coercion, bribery, threats or inducements, and Juror No. 7 did not know with whom the men who followed her home were associated. These conclusions involve not only a strained reading of the facts, but also require the majority to ignore the law.
Relying explicitly upon Remmer, we have found jury tampering based on contacts far more innocuous than those experienced by Juror No. 7. In United States v. Simtob, for example, we found jury tampering where the defendant had merely been “eye-balling” a juror during trial. We held:
Despite the lack of evidence that Simtob had any direct contact with the jury, the presumption of prejudice applies here because even indirect coercive contacts that could affect the peace of mind of the jurors could give rise to the Remmer presumption. That at least one juror’s peace of mind was affected is obvious from the district court’s assertion that the juror claimed he or she felt threatened by Simtob. The Government, therefore, bears the burden of rebutting the presumption of prejudice.
485 F.3d 1058, 1064 (9th Cir.2007) (internal citations and quotation marks omitted). If “eye-balling” constitutes a threat, then the actions of the spectators in the gallery of following Juror No. 7 home and shouting at her did as well.
Second, as our cases applying Remmer make clear, juror tampering requires neither that a juror know which party is responsible for the tampering nor that the threatening behavior explicitly reference the outcome of the case. In United States v. Dutkel, 192 F.3d 893, 898-99 (9th Cir.1999), we held that a co-defendant’s bribery and coercion of a juror as to the co-defendant’s case alone was prima facie jury tampering with respect to Dutkel as well, even though during the coercion of the juror, the co-defendant’s henchmen specifically stated, “We don’t care about Dutkel.” Id. at 897. The coercion in that case was explicitly divorced from the outcome of Dutkel’s trial, and yet we found jury tampering had occurred because the “intervention interfered with the jury’s deliberations by distracting one or more of the jurors, or by introducing some other extraneous factor into the deliberative process.” Id.
Dutkel was not an outlier case; rather, it flowed from a line of cases applying Remmer in the jury tampering context. In Dutkel we relied upon our holding in United States v. Angulo, 4 F.3d 843 (9th Cir.1993), for the proposition that “even indirect coercive contacts that could affect the peace of mind of the jurors give rise to the Remmer presumption.” 192 F.3d at 897. The contact in Angulo involved nothing more than an anonymous phone call to one of the jurors in which the caller said, “I know where you live.” 4 F.3d at 846. The caller never identified himself and never mentioned the “matter pending before the jury” on which the juror served. Id. Even though there were no facts tying the call to the case, the trial judge made the obvious connection between the phone call and the juror’s service, stating, “[p]eo-ple don’t go through life receiving calls like this ... and the most logical activity for you to tie it up with is jury duty.” Id. at 847. So too, a woman does not often go through life having two strange men, who had been sitting in the gallery during trial, follow her on her way home and repeatedly attempt to get her attention. Juror No. 7 made the obvious connection between her jury service and the men who followed her home as evidenced by her decision to report the incident to the judge. It is inconceivable that the trial court — and the panel majority — cannot.
*591 Even after the trial court in Angulo properly dismissed the juror who had received the phone call, we concluded that the contact at issue gave rise to the Rem-mer presumption because the trial judge never explained the juror’s absence to the other jurors and the other jurors knew of the phone call. Id. at 847. If secondhand knowledge of a phone call in which the caller did not identify which party he represented and failed to mention the juror’s case gives rise to the Remmer presumption, then surely the contact directly experienced by Juror No. 7 warrants the same. Moreover, the trial court in this case never examined Juror No. 7 to find out whether she had told other jurors about the experience, nor did it admonish her not to do so.
Jury tampering is “presumptively prejudicial,” Remmer, 347 U.S. at 229, 74 S.Ct. 450, and places “a heavy burden on the government to rebut the presumption by proving that the error was harmless beyond a reasonable doubt.” United States v. Rutherford, 371 F.3d 634, 641 (9th Cir.2004); see also Remmer, 347 U.S. at 229, 74 S.Ct. 450 (“[T]he burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.”).
The state courts either unreasonably determined the facts in light of the evidence presented in the state court proceeding or applied clearly established federal law in an objectively unreasonable manner. Because the state courts summarily denied Moody’s habeas petitions, it is unclear which of these errors occurred. If on the one hand, the state courts determined that this was not jury tampering, then they unreasonably determined the facts, even if they did apply the correct law. If on the other hand, the state courts concluded based on the facts that jury tampering occurred, then it is just as evident that they have applied clearly established federal law in an objectively unreasonable manner. Remmer, decided in 1954, holding that jury tampering is presumptively prejudicial, is about as clearly established as federal law can be. As such, the government must meet the burden of proving that contact with the juror was harmless. This has not and cannot be done. Either scenario warrants federal habeas relief.

. I agree with the majority’s conclusion regarding Moody’s ineffective assistance of counsel claims.